Mary A. KENNEDY, in her capacity as Executrix under the Will of Eugene R. Kennedy a/k/a Eugene Ronald Kennedy

v.

Michael E. TEMPEST.

No. 90–204–Appeal.

Supreme Court of Rhode Island.

July 26, 1991.

Thomas C. Plunkett, Kiernan, Plunkett & Woodbine, Providence, for plaintiff.

John W. Kershaw, Rice, Dolan & Kershaw, Providence, Michael Kiselica, Warwick, for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment entered in the Superior Court following a jury trial. The plaintiff, Mary Kennedy, appeals from the order of the trial justice granting the motion of the defendant, Michael E. Tempest to reduce the loss-of-consortium award and denying the plaintiff's motion to amend the judgment to increase the award to the statutory minimum. The defendant appeals from the orders of the trial justice denying his motion for directed verdict and motion for

new trial. We reverse. The facts insofar as pertinent to this appeal are as follows.

The plaintiff, in her capacity as executrix of the estate of Eugene R. Kennedy, brought this action under the Rhode Island Wrongful Death Statute, G.L.1956 (1985 Reenactment) chapter 7 of title 10 against National Grange Mutual Insurance Company,[1] Michael E. Tempest (Tempest), and Karen Haigh Escher (Escher)[2] in Kent County Superior Court, alleging that her husband sustained fatal injuries as a result of the negligence of defendants Tempest and Escher. In addition plaintiff individually brought an action for loss of consortium as a result of her husband's death.

At trial plaintiff testified that on the evening of September 18, 1984, her husband stated that he would leave shortly after 7 p.m. to walk four blocks to the Hill Funeral Home on Main Street in East Greenwich to attend a friend's wake. According to plaintiff, her husband would normally walk two blocks on Fifth Avenue to Main Street, cross Main Street, and then walk two blocks north on Main Street to the funeral home. The plaintiff testified that her husband had walked across Main Street on many prior occasions.

Tempest testified that on the same evening he left his place of employment shortly after 7 p.m. He traveled south on Main Street, a four-lane undivided highway, driving in the left-hand lane. According to Tempest, there were two cars ahead of him in the vicinity of the Hill Funeral Home. The first vehicle stopped to make a left-hand turn into the parking lot of the funeral home. At that point Tempest stopped his car in back of the second vehicle, a white Oldsmobile Cutlass, which had also stopped to allow the first vehicle to complete its turn. The white car in front of Tempest then proceeded, and Tempest in turn accelerated to a speed of about twenty-five miles per hour, remaining five to six feet behind the white vehicle. When the two cars had reached a point approximately 100 yards beyond the point at which they had been stopped, Tempest observed the white vehicle suddenly swerve to the right so violently that it crossed the right lane of travel and went up onto the curb before swerving back onto the travel portion of the highway. Tempest further testified that he observed almost simultaneously with the action of the white vehicle an object bounce in the vicinity of the yellow line in the middle of the road. This object, according to Tempest, "bounced up into the side of my car." Tempest stated that he did not see any pedestrian in the road at any time prior to encountering this object. At various points in his testimony, Tempest characterized this object as a "ball bouncing," or a "bag of clothing," and stated that when he observed the object, he did not identify it as a human being.

As a result of the impact with this "object," Tempest's vehicle sustained damage to the left-front fender, the windshield post, the left side of the hood, and the roof above the driver's-side door. The driver's side of the windshield was also shattered. Following the impact, Tempest stopped and turned his vehicle around, returning to the scene of the collision. It was at this point, Tempest testified, that he realized that he had been in a collision with a person, Eugene Kennedy. At that point Tempest approached an East Greenwich police officer, already at the accident scene, and informed the officer that he believed that he had been involved in a collision with the body.

Defendant Escher testified that her automobile was traveling north on Main Street in the left-hand lane. She stated that her automobile was the first vehicle in line, traveling at a speed of between thirty and thirty-five miles per hour, and that the traffic flow in general was heavy, although she did not remember what the traffic was like in the southbound lanes. Escher further testified that she observed Eugene

1. Prior to trial National Grange Mutual Insurance Company agreed to pay its coverage limit to plaintiff. Trial then proceeded against Tempest and Escher.

2. Judgment was entered for defendant Escher, based on the jury's finding of no negligence. The plaintiff has not pursued an appeal from the judgment entered in Escher's favor. Consequently she is not a party to this appeal.

Kennedy standing on the yellow lines in the middle of the road, but she was unable to state the direction he was facing. According to Escher, in the split second that she observed Eugene Kennedy standing in the road, she was thinking of moving her vehicle to the right-hand lane of travel in order to go around him. However, Escher testified, the next thing she knew, "he flew into my car and hit the side of my car." Escher described the damage to her car as a broken headlight, a dent in the corner of the left-hand fender, and what appeared to be blood along the back of the car on the rear fender. Escher stated that she took no evasive action before coming into contact with Eugene Kennedy because she did not have time to react. She stated that she felt the impact on the left-hand side of her vehicle but that Eugene Kennedy was "so low" that she could not see him.

An East Greenwich police officer, David S. Palmer, testified that he was traveling northward on Main Street and observed what he later determined to be the Escher vehicle two or three cars ahead of his police cruiser. From about two hundred feet in back of the Escher vehicle, Officer Palmer recalled seeing a body "go above the roof [of the Escher vehicle] and come down." Officer Palmer stated that he did observe approaching southbound traffic on Main Street but that his vision was obscured by the vehicles in front of him.

After seeing the body fall to the ground, Officer Palmer immediately stopped and left his vehicle. He stated that at that point he still was not sure whether it was "just a bag of clothes." Approximately one to two minutes later, Officer Palmer was approached by Tempest. Officer Palmer also observed leaving the scene a vehicle subsequently identified as the Escher vehicle, which returned to the scene about fifteen minutes later.

The deposition testimony of another witness, Michael Zenga (Zenga), was introduced at trial. Zenga testified that he was traveling northward in the right-hand lane when he observed a body go up into the air among the vehicles ahead of him. Zenga recalled traveling at a speed of thirty-five to forty miles per hour. He stated that he slammed on his brakes and was able to stop his car before hitting the body. Zenga also testified that while walking along the area where the accident had occurred, he observed dentures about twenty feet away along the northbound-side curb. Zenga also saw a small pool of blood in the northbound lane.

At the conclusion of plaintiff's case counsel for each defendant moved for a directed verdict. These motions were denied. Again at the conclusion of the entire case counsel for defendant Tempest moved for a directed verdict, which motion was again denied. The jury returned with a verdict in favor of plaintiff. Interrogatories to the jurors showed that they found no negligence on the part of Escher. The jury found negligence on the part of defendant Tempest, as well as on the part of decedent, Eugene Kennedy. Following the apportionment of negligence and award of damages,[3] counsel for defendant filed a motion for new trial and a motion to amend the judgment. Counsel for plaintiff also filed a motion to amend the judgment. After a hearing on the motions the trial justice denied defendant's motion for new trial. It is from the denial of that motion that defendant filed this appeal. The trial justice granted defendant's motion to amend the judgment and reduced the verdict in favor of plaintiff by 70 percent to reflect the apportionment of negligence attributed to Eugene Kennedy. The plaintiff's motions to amend the judgment were denied, and from those decisions plaintiff appeals.

■ The dispositive issue raised in this appeal is whether the trial justice erred in denying defendant's motion for directed verdict. The well-settled rule in this jurisdiction is that when passing upon a motion

3. The jury determined that there was no negligence on the part of Karen Escher. However, the jury found that defendant Michael Tempest was 30 percent at fault and that decedent Eugene Kennedy was 70 percent at fault. The jury awarded the estate of Eugene Kennedy damages in the amount of $112,859. In addition, Mary Kennedy was awarded $25,000 for loss of consortium.

for directed verdict, the trial justice in the first instance, and this court on review, must examine the evidence in the light most favorable to the plaintiff, without evaluating its credibility, and must draw all reasonable inferences in the plaintiff's favor. *Lamoureux v. Davis*, 504 A.2d 449, 451 (R.I.1986); *Evans v. Liguori*, 118 R.I. 389, 394, 374 A.2d 774, 776 (1977). "Only when the evidence is insufficient at law to support a verdict in the opposing party's favor may the court direct a verdict." *Beauvais v. Notre Dame Hospital*, 120 R.I. 271, 276, 387 A.2d 689, 692 (1978).

■ With these well-established standards in mind, we have carefully reviewed the evidence presented at trial in the light most favorable to plaintiff. In so doing, we believe the trial justice should have taken the case from the jury and directed the verdict in favor of defendant. The record is devoid of probative evidence that, if believed, would support plaintiff's claim.

■ The mere happening of an accident does not in and of itself necessarily warrant a reasonable and legitimate inference of negligence. *See Salk v. Alpine Ski Shop, Inc.*, 115 R.I. 309, 312, 342 A.2d 622, 625 (1975). To prevail in a negligence action, the plaintiff must introduce competent evidence to establish not only that the defendant owed a duty of care to the plaintiff and that that duty was breached, but also that the defendant's negligence was the proximate cause of the plaintiff's injury. *Id.* The facts of the instant case, as presented at trial, fail to establish any of these criteria.

Specifically, the evidence showed only that Eugene Kennedy somehow reached a point in the middle of the highway. There was no evidence relating to the questions of how he arrived at that point or, more importantly, whether he was even alive when he was struck by Tempest's vehicle. According to defendant's testimony, he never saw a pedestrian standing in the middle of the highway. His recollection of activity in the center line was of a "bouncing ball," which in a split second struck the windshield and left door post of his vehicle. There was no evidence presented to indicate that defendant was operating his vehicle in a negligent manner. Even the testimony of Officer Palmer and Zenga indicates that a body flew through the air after contact with Escher's vehicle. Neither witness could state that defendant's vehicle also came into contact with Eugene Kennedy.

■ It is, of course, undisputed that the body did come in contact with the Tempest vehicle. Nevertheless, the only testimony concerning the events that led up to the contact was that of Tempest himself. This testimony clearly indicated that the body was propelled through the air after contact with the Escher vehicle and struck the side of the Tempest vehicle. Thus no act or omission on the part of Tempest contributed to the contact. Nothing other than the mere physical presence of the Tempest automobile, coupled with the propelling force of the Escher automobile, brought about this forceful contact. Mere physical presence cannot serve as a basis for a finding of negligence or proximate cause.

Thus, we are persuaded that on the basis of the evidence presented at trial, with all reasonable inferences derived therefrom, the plaintiff failed to prove negligence on the part of the defendant. The jury's finding that the defendant was 30 percent at fault could be based only upon speculation and conjecture. This court has long held that a plaintiff may not rely upon conjecture or speculation to establish the essential elements of his case. *Salk*, 115 R.I. at 313, 342 A.2d at 625; *Nahigian v. Belcher & Loomis Hardware Co.*, 66 R.I. 194, 18 A.2d 388 (1941). Accordingly the defendant's motion for directed verdict should have been granted. The remaining issues raised in this appeal are not dispositive and need not be addressed.

For the reasons stated, the appeal of the plaintiff is denied and dismissed. The ap-

peal of the defendant is sustained, and the judgment entered in the Superior Court is hereby reversed. The papers in the case may be remanded to Superior Court with directions to enter judgment for the defendant.