USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2374 No. 93-1033 MARY HAYES, ADMINISTRATOR OF THE ESTATE OF ROBERT HAYES, JR., AND ERIC HAYES, Plaintiffs, Appellants, v. DOUGLAS DYNAMICS, INC., Defendant, Appellee. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, U.S. District Judge] ___________________ ____________________ Before Boudin and Stahl, Circuit Judges, ______________ and Fuste,* District Judge. ______________ ____________________ John Benjamin Carroll with whom Woodruff L. Carroll was on brief _____________________ ____________________ for appellant. John L. Kerr with whom Whiting & Elinoff was on brief for _____________ ___________________ appellee. ____________________ November 1, 1993 ____________________ _____________________ *Of the District of Puerto Rico, sitting by designation. -2- 2 FUSTE, District Judge. Appellants Mary and Eric Hayes FUSTE, District Judge. ______________ appeal from a grant of summary judgment in a negligence and breach of warranty action resulting from a car accident in which Robert Hayes, Jr., the son of Mary and brother of Eric, was killed. The district court held that plaintiffs failed to adduce adequate evidence to show that defendant's product was the proximate cause of the decedent's fatal injury. We affirm. affirm I. I. Background Background __________ On January 30, 1988, Robert Hayes, Jr. and his brother Eric were passengers in the rear compartment of a Ford Tempo. Robert, Jr. was sitting in the right rear passenger seat, and Eric was sitting behind the driver's seat. While the car was stopped at an intersection, waiting to make a left turn, it was hit from behind by a Chevrolet pickup truck. The driver of the truck attempted to swerve and avoid the car. The collision pushed the car into oncoming traffic where it was hit in the left front area by a van. The car spun one-hundred and eighty degrees before coming to rest. Robert, Jr. died the following day from a head injury sustained in the accident. The cause of death was a blow to the back of the head, behind the right ear. The other three passengers suffered minor injuries. Exactly which part of the truck hit the Tempo is a central issue in this case. The Chevrolet truck was fitted with a Western brand snowplow manufactured by defendant-appellee Douglas Dynamics. The snowplow unit is designed so that the -2- 2 frame, consisting of a metal hydraulic pump and motor unit with a metal lift channel, can remain attached to the truck even when the snowplow blade is removed. The blade was not attached to the truck at the time of the accident. Part of the lift channel consists of a lift arm which protrudes outward from the front of the truck. The end of the lift arm is a U-shaped plate approximately 2 inches by 3 1/2 inches in dimension. II. II. Theories of Recovery and Defense Theories of Recovery and Defense ________________________________ Plaintiffs brought a diversity jurisdiction suit in federal district court alleging breach of warranty1 and negligence and contending that defendant is liable for the wrongful death of Robert, Jr. and the mental injuries suffered by Eric Hayes as a result of seeing his brother sustain the fatal injury. The plaintiffs' theory is that the protruding lift arm of defendant's product caused the death of Robert, Jr., either by directly striking his head, or by propelling forward some metal piece of the Tempo which then dealt the fatal blow to his head. The plaintiffs also argue that the presence of the plow frame on the truck altered the dynamics of the pickup, making it more dangerous in a collision. In order to succeed in a claim for breach of warranty under Massachusetts law, the plaintiff must show that the ____________________ 1Under Massachusetts law, the theory of breach of an implied warranty of merchantability is basically the same as strict liability theory in tort. Wolfe v. Ford Motor Co., 386 Mass. 95, _______________________ 100, 434 N.E.2d 1008, 1011 (1982). -3- 3 defendant's product was the proximate cause of the injury. Colter v. Barber-Greene Co., 403 Mass. 50, 61, 525 N.E.2d 1305, ___________________________ 1312 (1988); Swartz v. General Motors Corp., 375 Mass. 628, 633, ______________________________ 378 N.E.2d 61, 65 (1978). A plaintiff alleging that a product was negligently designed can proceed by showing that the product either proximately caused or enhanced the injuries alleged. Simmons v. Monarch Mach. Tool Co., 413 Mass. 205, 212, 596 N.E.2d _________________________________ 318, 323 (1992). Because it is undisputed that Robert, Jr. was killed by a single blow to the head, the plaintiffs must show that the plow frame either caused the injury or that the injury would not have been fatal if the frame had not been attached to the truck. If the plaintiffs cannot prove that the plow frame was the proximate cause of the fatal injury itself, or that it caused an enhancement of a lesser injury, then the defendants are entitled to summary judgment as a matter of law. Proximate cause is a legal definition which requires that the precipitating object or action "in a continuous sequence, unbroken by any new cause, produces an event and without which the event would not have occurred." Wallace v. ___________ Ludwig, 292 Mass. 251, 254, 198 N.E. 159, 161 (1935). A ______ plaintiff need not prove the exact cause of the accident or disprove every possible cause, but he must show that there is a greater likelihood that the accident resulted from the defendant's negligence than that it did not. Enrich v. Windmere __________________ Corp., 416 Mass 83, 616 N.E.2d 1081, 1084 (1993). Therefore, in _____ order to proceed with their claims, the plaintiffs here must be -4- 4 able to show that there is a greater probability that the lift arm caused the death of Robert, Jr. than that some other object in the crash was the agent of injury. Defendant alleges that the evidence offered by plaintiffs is insufficient to establish that there is a genuine issue of fact as to whether the snowplow, directly or indirectly, caused the injury to Robert, Jr. Accordingly, the defendant filed a motion for summary judgment. Plaintiffs opposed and filed a cross-motion seeking similar relief. The district court granted the defendant's motion for summary judgment. The plaintiffs appeal the grant of summary judgment and the denial of their cross-motion. Plaintiffs also challenge several prejudgment rulings of the district court.2 III. III. Summary Judgment and Standard of Review Summary Judgment and Standard of Review _______________________________________ The purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial". Garside v. Osco Drug, Inc., 895 ___________________________ F.2d 46, 50 (1st Cir. 1990) (quoting Fed. R. Civ. P. 56 Advisory Committee's Note). Therefore, if the pleadings, depositions, answers to interrogatories, admissions and any affidavits on file show that there is no genuine issue as to a material fact, then the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). ____________________ 2Because we affirm the grant of summary judgment to the defendant, we do not reach the other issues raised on appeal by the plaintiffs. -5- 5 Where, as here, the moving party does not have the burden of proof at trial, that party must make a showing that the evidence is insufficient to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once this _________________________ showing has been made, it is up to the nonmoving party to establish the existence of a genuine disagreement as to some material fact. United States v. One Parcel of Real Property, 960 ____________________________________________ F.2d 200, 204 (1st Cir. 1992). In this context, "genuine" means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party", and a "material fact" is one which "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). _______________________________ Appellate review of summary judgment decisions is plenary. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. _____________________ 1990). In applying this standard, we view the record in the light most favorable to the nonmovants, the plaintiffs. Bank One ________ Texas, N.A. v. A.J. Warehouse, Inc., 968 F.2d 94, 97 (1st Cir. _____________________________________ 1992). IV. IV. Discussion Discussion __________ In support of their claims, the plaintiffs offer direct evidence in the form of the depositions of witnesses and photographs from the scene, as well as the affidavits of several experts.3 ____________________ 3Following the order of the district court granting summary judgment, the plaintiff moved to submit further evidence under Fed. R. Civ. Pro. 59(e) and 60(b)(6). The denial of these -6- 6 A. Direct Evidence A. Direct Evidence _______________ 1. Paul Porter 1. Paul Porter ___________ Paul Porter, a police officer who arrived immediately after the accident, testified that based on his examination of the vehicles, he believed that the front of the truck, with an emphasis on the left front quarter, struck the right rear of the Tempo. Porter stated that he saw "the plow frame and front end as one entity," and did not think that the plow frame did all of the damage to the Tempo. Porter testified that no blood or hair samples were found on the plow frame itself. In addition, Porter stated that when he arrived at the accident scene, Robert, Jr. was still in the car. The officer observed that the boy was pinned under a piece of the Tempo, a metal pillar from between ____________________ motions is also challenged on appeal. Decisions of the district court under these rules are reviewed for abuse of discretion. Valley Citizens for a Safe Environment v. Aldridge, 969 F.2d ______________________________________________________ 1315, 1317 (1st Cir. 1992) (Rule 60(b)); Mariani-Giron v. _________________ Acevedo-Ruiz, 945 F.2d 1, 3 (1st Cir. 1991) (Rule 59(e)). A Rule ____________ 60(b)(6) motion will be granted by a district court only if it finds "exceptional" circumstances that justify "extraordinary" relief. United States v. One Urban Lot, 882 F.2d 582, 585 (1st _______________________________ Cir. 1989). Rule 50(e) motions are granted for reasons such as the commission by the trial court of a manifest error of law or fact, the discovery of new evidence, or an intervening change in the law. National Metal Finishing Co. v. _____________________________________________ BarclaysAmerican/Commercial, Inc., 899 F.2d 119, 124 n.2 (1st __________________________________ Cir. 1990)(citations omitted). Plaintiffs presented no reasons to the district court which would warrant relief under 60(b) or 59(e). The judge noted that none of the information presented was new, nor was it unavailable when the summary judgment was filed. In addition, he stated that the new evidence would not have changed his prior analysis. We are unable to find any reasons in the record to justify the submission of further evidence, and plaintiffs have not advanced any. Therefore we find that it was not an abuse of discretion for the court to deny the plaintiff's motions, and we will not consider the additional affidavits on appeal. -7- 7 the side rear window and the rear window. The pillar was leaning against the head of Robert, Jr., behind his right ear. Because Porter did not distinguish between the plow frame and the front of the truck, his testimony does not help to establish that the snowplow frame, directly or indirectly, caused the death of Robert, Jr. Porter's testimony about the lack of blood or hair on the plow frame tends to refute the theory that the lift arm itself came into contact with the victim's head. In addition, the officer's observation of the metal pillar leaning against the decedent's head suggests one alternative explanation for how Robert, Jr. may have received the head injury. 2. William Richardson 2. William Richardson __________________ William Richardson, the driver of the truck, stated that he hit the car off-center because he swerved in an attempt to avoid the accident. He testified that approximately the center of the front end of his truck hit the right rear passenger side of the Tempo, but he was unable to see whether the lift arm itself impacted the car. Richardson's testimony establishes that the right rear passenger area of the Tempo received the brunt of the collision. Due to this, it is understandable that the injury to Robert, Jr. was more severe than that to any other occupant of the car. Because Richardson could not see what happened to the lift arm during the collision, his testimony does not help to establish a causal link between defendant's product and the injury to the victim. 3. Police Photographs 3. Police Photographs __________________ -8- 8 The police photographs offered by the plaintiffs depict a mangled mass of metal in the right rear passenger area of the Tempo, and some damage to the left front of the truck. The pictures show that the damage to the right rear part of the car was far more extensive than that sustained by the left rear region. The photographs do not further the plaintiffs' claim that the defendant's product caused the injury, but rather suggest a number of different possibilities for what might have hit Robert, Jr. on the head. Wolf Technical Services, an engineering consulting firm, was employed to analyze the photographs of the accident. The consultants concluded that the rear seat back was moved forward approximately 11.5 inches on the left end and 24 inches on the right end, and the rear bumper was displaced approximately 15 inches at the left end and at least 30 inches on the right side. These results are consistent with the other evidence that the right rear part of the Tempo sustained the brunt of the damage. However, as the district court pointed out, the study does not establish that the plow frame caused the seat back and fender to move forward. The plaintiffs claim that the lift mechanism caused, among other damage, a wedge shaped mark on the trunk lid of the Tempo. If shown, this might help to establish that the lift mechanism played a major role in the accident. As noted by the district court, however, no such mark is visible in the police photographs. -9- 9 B. Expert Witnesses B. Expert Witnesses ________________ The plaintiffs have produced the affidavits of a number of expert witnesses and argue that, under Federal Rule of Evidence 705, we must accept the conclusions of these experts. While nonmovants may rely on the affidavits of experts in order to defeat a motion for summary judgment, such evidence must still meet the standards of Rule 56. Fed. R. Civ. P. 56(e) requires that the nonmoving party "set forth specific facts showing that there is a genuine issue for trial." Plaintiff's reliance on Federal Rule of Evidence 705, which allows an expert to give opinion testimony, together with the supporting reasons, without disclosure of the underlying facts or data, is inapposite.4 This rule was designed to apply in the context of a trial, where cross-examination provides an opportunity to probe the expert's underlying facts and data and to test the conclusions reached by the expert. Although expert testimony may be more inferential than that of fact witnesses, in order to defeat a motion for summary judgment an expert opinion must be more than a conclusory assertion about ultimate legal issues. Bowen v. Manchester, 966 ___________________ F.2d 13, n.16 (1st Cir. 1992). See also Moody v. Boston and ________ ____________________ ____________________ 4Fed. R. Evid. 705 provides: The expert may testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination. -10- 10 Maine Corp., 921 F.2d 1, 5 (1st Cir. 1990); Sultis v. General ____________ __________________ Motors Corp., 690 F. Supp. 100, 103 (D. Mass. 1988). The _____________ evidentiary rules regarding expert testimony at trial were "not intended . . . to make summary judgment impossible whenever a party has produced an expert to support its position." Merit _____ Motors, Inc. v. Chrysler Corp., 569 F.2d 666, 673 (D.C. Cir. ________________________________ 1977). We are not willing to allow the reliance on a bare ultimate expert conclusion to become a free pass to trial every time that a conflict of fact is based on expert testimony. As with all other evidence submitted on a motion for summary judgment, expert affidavits must be reviewed in light of F.R.Civ.P. 56. Where an expert presents "nothing but conclusions -- no facts, no hint of an inferential process, no discussion of hypotheses considered and rejected", such testimony will be insufficient to defeat a motion for summary judgment. Mid-State _________ Fertilizer v. Exchange Natl. Bank, 877 F.2d 1333, 1339 (7th Cir. __________________________________ 1989). See also Evers v. General Motors, 770 F.2d 984, 986 (11th ________ _______________________ Cir. 1985); Bulthuis v. Rexall Corp, 789 F.2d 1315, 1318 (9th ________________________ Cir. 1985). Although an expert affidavit need not include details about all of the raw data used to produce a conclusion, or about scientific or other specialized input which might be confusing to a lay person, it must at least include the factual basis and the process of reasoning which makes the conclusion viable in order to defeat a motion for summary judgment. We find that each of the expert affidavits failed to contain sufficient -11- 11 support for the conclusion that the injury to Robert, Jr. was caused by the defendant's product. 1. Nicholas Miller 1. Nicholas Miller _______________ Nicholas Miller, an expert in accident reconstruction, used the police report, autopsy report, death certificate, hospital and medical records, depositions, pictures of the accident scene and vehicles, and the study conducted by Wolf Technical Services, in order to reconstruct the accident. Miller also utilized similar vehicles to simulate the relative positions of the truck and the Tempo before impact, and conducted a video computer graphic reenactment. Based on this input, Miller concluded that the lift mechanism caused Robert, Jr.'s injuries. Miller opines that the deceased was struck by sheet metal pushed forward by the lift arm of the snowplow. He explains his reasoning as follows: (1) the fatal blow was by an object of the same size, shape and rigidity as the lift arm; (2) there was no other object of similar shape, size, and rigidity near the decedent's head; (3) therefore, defendant's product caused the injury. Even assuming that the victim was killed by an object of the dimensions and shape of the lift arm ("rigidity" was never further discussed by any of the experts), Miller's bald assertion that no other part of the car or truck had that particular shape is difficult to accept, given that Miller never had the opportunity to examine the Tempo after the accident. The photographs of the Tempo after the crash are not sufficiently clear to establish the shape and size of each of the pieces of -12- 12 the wreck. Miller claims to have eliminated all other possibilities as to what could have struck Robert, Jr., but provides no factual details about this analysis. He fails to even mention or discuss the only object which anyone saw near the victim's head, the metal window support which Porter observed. In his second supplemental affidavit, Miller discusses the exemplar vehicles. Starting with a picture of a Chevrolet pickup truck with a snowplow frame attached, situated behind a Ford Tempo, Miller drew a line representing where the snowplow would end up if it proceeded directly into the Tempo. Miller concludes that "it is apparent as an observable fact, that the lift mechanism attached to the truck reached and invaded the right-rear seat at head height and would have struck the right rear passenger." Miller provides no supporting data to establish that the exemplar vehicles were in the same positions relative to each other as the actual truck and Tempo had been at the time of the accident. Even assuming that the exemplar vehicles were correctly positioned, these pictures do not show what actually happened to the Tempo. The pictures of the exemplar vehicles show only that if the truck were to penetrate directly through the trunk of the car, in a straight line, then the front of the truck, including the plow mechanism, would end up in the rear passenger area. This establishes nothing more than that it is possible, given the relative height of the vehicles, that the plow caused injury. Miller provides no facts from which we can reach the conclusion -13- 13 that it is more probable than not that the plow frame tore directly, without any resistance, into the car in a linear fashion and reached the passenger's head. 2. Norris Shoemaker 2. Norris Shoemaker ________________ Norris Shoemaker, a consultant in transportation safety, reviewed the same documents and pictures as Mr. Miller. In his initial affidavit, Shoemaker made general observations about the design of the snowplow, asserting that the defendant's product "changes the crush characteristics of the pickup truck and concentrates the energy of the collision in a narrow area projecting in front of the vehicle in a narrow spearlike configuration" and, as a result, the snowplow frame "can and has inflicted severe head and other injuries". This is not evidence of what actually happened in the accident with which we are concerned. Although in his supplemental affidavit Shoemaker makes more specific assertions about the accident at hand, they are not sufficient to establish a causal connection. Shoemaker asserts that "a comparison of the exemplar vehicles and the damage photographs clearly show a penetration to and beyond the right rear passenger seat by the Defendant's product." However, without additional facts, a comparison of these two sets of photographs does not sustain such a conclusion. The exemplar pictures show only where the truck may have struck the Tempo, and the damage pictures are not sufficiently clear or detailed to show that the lift arm or other parts of the plow frame ever penetrated into the right rear passenger seat. -14- 14 3. Gerald Feigin 3. Gerald Feigin _____________ Dr. Gerald Feigin, the medical examiner who performed the autopsy on the deceased, submitted an affidavit. Based on his experience, the autopsy report and pictures, and an examination of a Western lift arm, Feigin concluded that a blunt object shaped like a lift armcaused the fatal blow to Robert, Jr. Feigin's affidavit was written four years after he performed the original autopsy. At the autopsy, Feigin noted a one centimeter contusion on the head. However, in his affidavit, he suggests that the bruise was in conformity with the size of the terminus of the lift arm, which is 2 inches by 3 1/2 inches. This creates a factual discrepancy as to the actual size of the bruise. In addition, as the district court pointed out, the pictures attached to the autopsy do little to support Feigin's conclusion. They do not clearly show a U-shaped bruise conforming to the reported size and shape of the lift arm. It is arguable that these concerns go to the weight of the evidence and the credibility of the witness, and would not themselves be a sufficient basis, on summary judgment, for disregarding the evidence. But even if we accept the conclusion that the bruise on the decedent was the same size and shape as an injury which would result if a "blunt object shaped like a Western lift arm" struck a human head, this does little to establish that, in this particular case, the lift arm actually did strike Robert Hayes, Jr. 4. Dr. Ommaya 4. Dr. Ommaya __________ -15- 15 Plaintiffs also attached the affidavit of Dr. Ayub Khan Ommaya, a neurosurgeon. Ommaya examined the police report, accident photographs, medical records, autopsy report, death certificate, witness depositions, and affidavits of the other experts. Based upon this evidence, he concluded that the fatal injury was caused by the snowplow lift mechanism because, among other unnamed reasons, "the deceased was seated in the path of the lift mechanism and [the] type and location of the bruising fits the penetration path of the lift mechanism". Ommaya added that there was no other source for the head injury and that his conclusion was inevitable from the dynamics of the accident, including the acceleration forces. Ommaya asserted that Robert, Jr. would have sustained minor injuries similar to those of the other passengers in the car if the lift mechanism was not present. The difficulty with Dr. Ommaya's opinion is that he begins with one assumption, that the deceased was in the path of the lift mechanism; adds a further assumption, that there was no other object which could have caused the injury sustained by the deceased, and then concludes that the lift mechanism caused the injury. As we have seen, there are not sufficient facts to establish that the lift mechanism entered the compartment where Robert, Jr. was sitting, and Ommaya does not offer any additional facts. The assumption that there was no other source of injury disregards the presence of all other parts of the Tempo and the truck, in particular the piece of the car which Officer Porter -16- 16 testified he found lying against the boy's head. Ommaya fails to discuss the "dynamics of the accident" or the "acceleration forces", which he claims lend support to his conclusion. Ommaya asserts that Robert, Jr. would have sustained minor injuries similar to those of the other passengers in the car if the lift mechanism was not present. It is clear from the police photographs that the primary damage to the Tempo was in the right rear area of the car. The driver of the truck testified that the right rear passenger area received the brunt of the collision. Regardless of the presence of the snowplow frame, therefore, it is likely that the passenger seated in that compartment would have been more severely injured than any of the other passengers. V. V. Conclusion Conclusion __________ We hold that there is no genuine dispute of material fact as to whether the defendant's product was the proximate cause of the fatal injury to Robert Hayes, Jr. The evidence does not establish that it is more probable than not that the plow frame came into contact, directly or indirectly, with the victim. Given the available facts, the experts were able to provide no more than unsubstantiated conclusions. The district court correctly granted summary judgment. Affirmed. Affirmed ________ -17- 17