June 11, 2019

**Supreme Court**

No. 2017-371-Appeal.
No. 2018-136-Appeal.
(PC 15-5402)

|                                              |     |
| -------------------------------------------- | --- |
| Dolores Voccola                              | :   |
| v.                                           | :   |
| The Stop & Shop Supermarket Company, LLC et al. | :   |
| v.                                           | :   |
| Xpress Sweeping, Inc.                        | :   |

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at (401) 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2017-371-Appeal.
No. 2018-136-Appeal.
(PC 15-5402)
(Dissenting Opinion begins
on Page 8)

|  |  |
|---|---|
| Dolores Voccola | : |
| v. | : |
| The Stop & Shop Supermarket Company, LLC et al. | : |
| v. | : |
| Xpress Sweeping, Inc. | : |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.** The plaintiff, Dolores Voccola (plaintiff or Voccola), appeals from the entries of summary judgment in the Superior Court in favor of the defendant, The Stop & Shop Supermarket Company, LLC (Stop & Shop), and the third-party defendant, Xpress Sweeping, Inc. (Xpress Sweeping) (collectively defendants). This case came before the Supreme Court for oral argument on March 5, 2019, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After carefully reviewing the record, we are satisfied that this appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we vacate the judgments of the Superior Court.

- 1 -

## Facts and Travel

In the light most favorable to plaintiff, the facts, as set forth in the record, are as follows. At approximately 7 a.m. on March 1, 2013, plaintiff parked her car in the parking lot of a Stop & Shop supermarket located in Smithfield, Rhode Island.[1] As she was walking from her car to the entrance of the Stop & Shop, plaintiff slipped and fell on what she characterizes as black ice, and suffered injuries to her right hand and wrist. The plaintiff filed suit against Stop & Shop on December 10, 2015, alleging negligence on the part of Stop & Shop for her resulting injuries.[2] Stop & Shop answered plaintiff's complaint and also filed a third-party complaint against Xpress Sweeping to defend, indemnify, and hold Stop & Shop harmless for any claims arising out of Xpress Sweeping's duty under defendants' snow services agreement.[3]

Both Stop & Shop and Xpress Sweeping filed motions for summary judgment in accordance with Rule 56 of the Superior Court Rules of Civil Procedure. Essentially, defendants argued that plaintiff failed to assert sufficient facts necessary to satisfy the elements of her negligence claim because plaintiff testified at her deposition that she did not see, feel, or in any manner observe ice at or near the location of her fall. The defendants therefore argued that plaintiff could only "speculate" that her fall was caused by black ice. The plaintiff objected to defendants' motions and claimed that her deposition testimony "was based on a sound inference clearly supported by scientific fact." She thus argued that summary judgment was not proper

---

[1] While the complaint alleged that the incident occurred at the Stop & Shop in North Smithfield, it is apparent from the record that plaintiff's fall occurred at the Smithfield location.

[2] The plaintiff's complaint also named "John Doe" as a defendant pursuant to General Laws 1956 § 9-5-20; however, the record does not indicate whether plaintiff ascertained "John Doe's" identity.

[3] According to Stop & Shop, Xpress Sweeping was contractually obligated to provide snow services "to maintain pedestrian and vehicle safety" at the Stop & Shop location in Smithfield.

because this testimony, coupled with meteorologist Steven Cascione's affidavit and meteorological report, gave rise to a disputed issue of material fact as to whether there was black ice in the parking lot of the Stop & Shop where she fell. The defendants' motions were heard and decided together on September 20, 2017. After hearing the arguments of counsel, the trial justice granted both motions, and separate Rule 54(b) final judgments were entered in favor of defendants. The plaintiff filed notices appeal from both, and her appeals were consolidated in this Court.

**Standard of Review**

"This Court reviews a grant of summary judgment *de novo*." *Long v. Dell, Inc.*, 93 A.3d 988, 995 (R.I. 2014) (brackets omitted) (quoting *Sullo v. Greenberg*, 68 A.3d 404, 406 (R.I. 2013)). "Summary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." *Rohena v. City of Providence*, 154 A.3d 935, 937 (R.I. 2017) (brackets omitted) (quoting *Cruz v. DaimlerChrysler Motors Corp.*, 66 A.3d 446, 451 (R.I. 2013)). Summary judgment is appropriate only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Plunkett v. State*, 869 A.2d 1185, 1187 (R.I. 2005) (brackets omitted) (quoting *Wright v. Zielinski*, 824 A.2d 494, 497 (R.I. 2003)). "Only when a review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's grant of summary judgment." *National Refrigeration, Inc. v. Standen Contracting Company, Inc.*, 942 A.2d 968, 971 (R.I. 2008) (quoting *Carlson v. Town of Smithfield*, 723 A.2d 1129, 1131 (R.I. 1999)).

**Analysis**

On appeal, plaintiff argues that the Superior Court erred in granting summary judgment in favor of defendants because a genuine issue of material fact exists as to whether there was black ice in the area of the parking lot of Stop & Shop where plaintiff slipped and fell. In turn, defendants argue that this Court should affirm the judgments because plaintiff failed to produce sufficient evidence, beyond mere speculation and conjecture, that there was a dangerous condition in the parking lot of Stop & Shop on March 1, 2013. We disagree with defendants' contention.

It is well settled that "to prevail on a claim of negligence 'a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage.'" *Habershaw v. Michaels Stores, Inc.*, 42 A.3d 1273, 1276 (R.I. 2012) (quoting *Holley v. Argonaut Holdings, Inc.*, 968 A.2d 271, 274 (R.I. 2009)). Specifically, with respect to a slip-and-fall claim, a plaintiff "must present evidence of an unsafe condition on the premises of which the defendant was aware or should have been aware, and that the condition existed for a long enough time so the owner of the premises should have taken steps to correct the condition." *Bromaghim v. Furney*, 808 A.2d 615, 617 (R.I. 2002). "This Court has held that 'complaints sounding in negligence generally are not amenable to summary judgment and should be resolved by fact finding at the trial court * * *.'" *Dent v. PRRC, Inc.*, 184 A.3d 649, 653 (R.I. 2018) (quoting *Berard v. HCP, Inc.*, 64 A.3d 1215, 1218 (R.I. 2013)).

To avoid summary judgment, the burden is on plaintiff, the nonmoving party, to produce competent evidence that establishes a genuine issue of material fact. *Hill v. National Grid*, 11 A.3d 110, 113 (R.I. 2011). One of the threshold inquiries in a slip-and-fall case is the

existence of a dangerous condition on the premises, and, so, at the summary-judgment hearing, plaintiff was required to present evidence that her fall was the result of an unseen danger, such as black ice. The plaintiff submitted an affidavit prepared by meteorologist Steven Cascione that analyzed the weather conditions the day before the incident, as well as the morning of plaintiff's fall. Mr. Cascione's affidavit and attached report explained that the temperature fluctuation on March 1, 2013, with a drop from 33.8 degrees at 4:15 a.m. to 30.2 degrees at 5:55 a.m., and then back up to 33.8 degrees at 7:15 a.m., along with little wind and partly cloudy skies, was an ideal condition for radiational cooling.[4] Mr. Cascione expounded further upon the temperature fluctuation and stated that, on February 28, 2013, the day before plaintiff's fall, the temperature reached a high of 42 degrees, which would allow for melting of any snow or ice on ground surfaces. Mr. Cascione then reviewed two photographs taken in April 2016 that depicted a snow pile similar to that which was near the area where plaintiff fell on March 1, 2013. He stated:

> "After reviewing the pictures that you presented to me of a snow pile in the Stop and Shop parking lot, it is through my Meteorological expertise, that melting would occur from the snow pile in question producing runoff on February 28th into the early morning hours of March 1, 2013 before the temperature fell below freezing. If the melting snow or runoff was not treated with a deicing chemical, then ice would form from the below freezing temperatures in the time frame stated earlier on the morning of March 1, 2013. Also with the low sun angle around 7 AM on March 1[,] 2013, it may have been hard to see the formation of ice as it can often blend in with the asphalt. That is where the term Black Ice comes from."

Mr. Cascione's affidavit concluded with the following: "It is my opinion that the cause of the slip and fall suffered by [plaintiff] was a direct and proximate result of black ice o[n] the surface

---

[4] According to Mr. Cascione, "radiational cooling" is a term used to describe "the release of surface heating back into space before the radiation of the sun can heat up the surface at ground level again."

of the asphalt that she had walked on, while traversing from her parked vehicle to the entrance of Stop and Shop[.]"

In addition to Mr. Cascione's affidavit, plaintiff also offered a transcript of her deposition testimony in support of her opposition to defendants' motions for summary judgment. She testified that, at approximately 7 a.m. on March 1, 2013, it was neither raining nor snowing; however, it was a cold day with no sun because it was still early morning. When she got out of her car, she testified, the parking lot was "generally clean and dry[,]" except for a pile of snow that was piled on and around a parking lot median between her car and the entrance to Stop & Shop. She testified that, as she was walking to the entrance, she did not notice any ice on the ground; however, when she fell it "felt like somebody pulled the rug out from under [her] and [she] just went down and landed on [her] wrist[.]" When asked if she observed any ice on the ground where she fell, plaintiff testified that she "did not notice ice or [she] would have avoided it." She also testified that, although she did not see any ice before or after her fall, she knew there was black ice where she fell because otherwise she "wouldn't have fallen the way [she] did."

At her deposition, plaintiff also presented two photographs taken approximately three years after the incident that depicted how the area looked to her on the day she fell. The photographs show a pile of snow adjacent to a handicapped parking spot on and around a parking lot median directly across from the entrance to Stop & Shop. The plaintiff testified that, on the day she fell, the snow pile was smaller than what was shown in the two photographs and that she was not sure of the height of the pile on the day she fell, but that it was not "spread out this way. I think it was just a pile." She further testified: "[T]he reason I took the pictures is I wanted to

show that this was where the snow was piled *every storm*. Since 2013, I have seen snow piled there *every time* there's a storm. It's never cleared away." (Emphasis added.)

Under our well-established summary-judgment standard, and viewing the evidence and inferences to be drawn from the evidence in the light most favorable to plaintiff, we conclude that plaintiff satisfied her burden of "produc[ing] competent evidence that proves the existence of a disputed issue of material fact" such that a reasonable factfinder could conclude that the cause of plaintiff's fall was, in fact, black ice. *Wyso v. Full Moon Tide, LLC*, 78 A.3d 747, 750 (R.I. 2013) (brackets omitted) (quoting *Sullo*, 68 A.3d at 407). This is a fact that is capable of proof by direct evidence or proof by inference. The defendants are free to challenge plaintiff's assertions and argue that there was no black ice present in the area of plaintiff's fall, and that plaintiff's version of facts is incorrect. However, at the summary-judgment stage, a trial justice must not weigh the evidence or make credibility determinations. Rather, a trial justice must view the evidence in the light most favorable to the nonmoving party and determine if that party has submitted sufficient evidence to create a genuine issue of material fact. We hold that plaintiff has done so and that the trial justice erred in granting summary judgment in favor of defendants.

The sole issue before the trial justice was whether there were genuine issues of material fact as to the dangerous condition that caused plaintiff's fall that would preclude summary judgment. In determining whether an issue is genuine for purposes of summary judgment, a trial justice cannot consider the merits, make credibility determinations, evaluate testimony, or weigh the evidence. Instead, the trial justice "must review the pleadings, affidavits, admissions, answers to interrogatories, and other appropriate evidence from a perspective most favorable to the party opposing the motion." *Gliottone v. Ethier*, 870 A.2d 1022, 1027 (R.I. 2005) (quoting

- 7 -

*Steinberg v. State*, 427 A.2d 338, 340 (R.I. 1981)).  However, in the case at bar, the trial justice

undertook a factual determination and weighed expert testimony when she stated:

> "[W]hat the [c]ourt is stuck with is this idea that what he looked at, those pictures—and it's interesting.  As counsel points out, not only can I say they're not similar to the snowbanks that were present on that day, your own client actually stated they're not; that the ones that were there that day were much smaller.  I don't know how much value, or whether or not that rises to the level, I should say, of the competent evidence that plaintiff needs to produce because I don't know that it is competent.  It's an opinion based upon something entirely different."

The trial justice also weighed the evidence when she stated:

> "I don't think this report says what you hoped it would say. If that's supposed to raise a genuine issue of fact whether there was ice in the area at the time of plaintiff's fall, and whether the ice, if any, would have been noticeable on the asphalt, I don't think this gets you there.  I think this last part that we've referenced, there's inferences that can be drawn.  I think there's a fine line or a tipping point when we go from inferences to just pure speculation."

At the summary-judgment hearing, it was not the moment for the trial justice to weigh the

evidence before her or make credibility assessments—that is a function that should be reserved

for the factfinder at trial.  *See Limoges v. Nalco Company*, 157 A.3d 567, 571 (R.I. 2017).

Accordingly, we vacate the judgment granting summary judgment in favor of the defendants.

**Conclusion**

For the reasons set forth herein, we vacate the judgments of the Superior Court.  The

papers in this case may be remanded to the Superior Court for further proceedings.

**Justice Indeglia, with whom Justice Robinson joins, dissenting.**  Even in a negligence

claim, for a plaintiff to survive a motion for summary judgment he or she must submit competent

evidence sufficient to create a genuine issue of material fact to be resolved at trial.  From my

review of the record, however, Voccola merely presented speculative evidence on the issue of the existence of black ice in the Stop & Shop parking lot on the day that she fell, making summary judgment in favor of the defendants appropriate in this case. Therefore, I must respectfully dissent.

"To prevail in a negligence action, the plaintiff must introduce competent evidence to establish not only that the defendant owed a duty of care to the plaintiff and that that duty was breached, but also that the defendant's negligence was the proximate cause of the plaintiff's injury." *Kennedy v. Tempest,* 594 A.2d 385, 388 (R.I. 1991). Specifically, on the element of causation, "the causal connection between negligence and a plaintiff's injury must be established by competent evidence and may not be based on conjecture or speculation." *Cooley v. Kelly*, 160 A.3d 300, 305 (R.I. 2017) (brackets omitted) (quoting *McLaughlin v. Moura*, 754 A.2d 95, 98 (R.I. 2000)).

Regarding a motion for summary judgment, this Court has stated that "[w]e will affirm a trial court's decision only if, after reviewing the *admissible* evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Bayview Loan Servicing, LLC v. Providence Business Loan Fund, Inc.*, 200 A.3d 153, 156 (R.I. 2019) (emphasis added) (brackets omitted) (quoting *Cancel v. City of Providence*, 187 A.3d 347, 350 (R.I. 2018)).

In the instant case, my primary concern is the fact that Voccola never properly identified what had caused her to fall. In *Russian v. Life-Cap Tire Services, Inc.*, 608 A.2d 1145 (R.I. 1992), this Court affirmed a hearing justice's grant of summary judgment in favor of the defendant, holding that the plaintiff failed to assert sufficient facts on which reasonable inferences could be drawn identifying the defendants' negligence as the proximate cause of the

plaintiff's injury. *Russian*, 608 A.2d at 1147, 1148. There, the plaintiff was injured on the premises of one of the defendants, an automobile tire business, and claimed that he "felt something hit him in the shins" prior to falling. *Id.* at 1147. However, the plaintiff never identified what had actually hit him in the shins; rather, he testified that the work area was clear of debris and tools in the immediate area where he fell. *Id.* at 1146. The plaintiff conjectured that it may have been a car jack that caused his fall, but failed to present any evidence from which one could rationally infer any negligence on the part of the defendants. *Id.* at 1147. In affirming summary judgment in favor of the defendants, this Court reasoned that "the mere happening of an accident does not in and of itself necessarily warrant a reasonable and legitimate inference of negligence." *Id.* (brackets omitted) (quoting *Kennedy*, 594 A.2d at 388); *see Habershaw v. Michaels Stores, Inc.*, 42 A.3d 1273, 1277 (R.I. 2012) (holding that a mere allegation that retailer's floor was "shiny" was insufficient to support a negligence claim arising out of customer's slip and fall because it was not competent evidence).

Here, Voccola stated in her deposition that at the time of her fall she did not observe any ice; she did not touch the ground with her hand to feel if there was ice; she did not notice if her clothes were wet; and, when she observed the pavement, she found it to be uniform and all one color. Like the plaintiff in *Russian*, Voccola could not identify with any specificity what had caused her fall. *Russian*, 608 A.2d at 1147. While Voccola may conjecture that black ice caused her to fall, her own deposition testimony contradicts her theory. Because the mere fact that Voccola fell "does not in and of itself necessarily warrant a reasonable and legitimate inference of negligence[,]" her deposition testimony was not competent evidence on the existence of black ice. *Id.* (quoting *Kennedy*, 594 A.2d at 388).

Because Voccola's deposition testimony was not enough to carry her past defendants' motions for summary judgment, the only discovery material that might save her claim was the affidavit of Steven Cascione (the Cascione affidavit). My concern here is that the majority appears to believe that, when the hearing justice found that Cascione failed to lay a proper foundation and excluded the Cascione affidavit as too speculative, she improperly weighed the evidence. I disagree. From my review of the record, it appears that the hearing justice based her decision to disregard the Cascione affidavit on Rule 56(e) of the Superior Court Rules of Civil Procedure.

"We are cognizant that in considering a motion for summary judgment, the court does not pass upon the weight and credibility of the evidence, but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." *Weaver v. American Power Conversion Corporation*, 863 A.2d 193, 200 (R.I. 2004). "However, we also have held that naked and conclusory assertions in an affidavit are inadequate to establish the existence of a genuine issue of material fact and thus do not afford a basis for reversal of a trial justice's ruling granting a motion for summary judgment." *Id.* "The obvious rationale for this rule prevents a party from dodging summary disposition with factual assertions in tailor-made affidavits designed solely to create a mirage of material issues." *Id.*

It is well settled in this jurisdiction that "[b]efore admitting expert testimony, the trial justice must evaluate whether the testimony that a party seeks to present to the jury is 'relevant, within the witness's expertise, and *based on an adequate factual foundation*.'" *Kurczy v. St. Joseph Veterans Association, Inc.*, 820 A.2d 929, 940 (R.I. 2003) (emphasis in original) (quoting *Rodriquez v. Kennedy*, 706 A.2d 922, 924 (R.I. 1998)); *see also Franco v. Latina*, 916 A.2d 1251, 1258 (R.I. 2007) ("An expert may not give an opinion without describing the foundation

on which the opinion rests.") (quoting *Gorham v. Public Building Authority of Providence*, 612 A.2d 708, 717 (R.I. 1992)). Rule 56(e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be *admissible in evidence*, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." (Emphasis added.) "[A]lthough an opposing party is not required to disclose in its affidavit all its evidence, he or she must demonstrate that he or she has evidence of a substantial nature, as distinguished from legal conclusions, to dispute the moving party on material issues of fact." *Jessup & Conroy, P.C. v. Seguin*, 46 A.3d 835, 839 (R.I. 2012) (brackets omitted) (quoting *Bourg v. Bristol Boat Co.*, 705 A.2d 969, 971 (R.I.1998)).

In this case, the hearing justice correctly surmised that the Cascione affidavit was the only evidence that might save Voccola's claim, recounting:

> "As counsel points out, not only can I say they're not similar to the snowbanks that were present on that day, your own client actually stated they're not; that the [snowbanks] that were there that day were much smaller. I don't know how much value, or whether or not that rises to the level * * * of the competent evidence that plaintiff needs to produce[.]"

The hearing justice then went on to discuss the rest of the Cascione affidavit, stating: "I think that is speculation. I don't think it's competent evidence." Furthermore, she found that "even when I take all the inferences in the light most favorable to the plaintiff that would establish—when I say 'no evidence,' [I mean] no competent evidence." I think it is clear from the record that the hearing justice made a Rule 56(e) determination regarding the speculative nature of the Cascione affidavit.

The issue before us in the instant case is whether, at the summary-judgment stage, a hearing justice may make an independent determination regarding the speculative nature of an expert's affidavit. Because caselaw regarding this issue in our jurisdiction is sparse, I look

elsewhere for guidance. "This Court has stated previously that where the federal rule and our state rule of procedure are substantially similar, we will look to the federal courts for guidance or interpretation of our own rule." *Crowe Countryside Realty Associates., Co., LLC v. Novare Engineers, Inc.*, 891 A.2d 838, 840 (R.I. 2006) (brackets omitted) (quoting *Smith v. Johns-Manville Corp.*, 489 A.2d 336, 339 (R.I. 1985)). Because Rule 56(e) is substantially similar to its federal counterpart, this Court should look to federal court decisions to interpret whether a hearing justice can make an independent 56(e) determination regarding an expert witness's testimony at the summary-judgment stage.

"Under Rule 56(e), affidavits supporting or opposing summary judgment must set forth facts that would be admissible in evidence. A district court may exclude expert testimony where it finds that the testimony has no foundation or rests on speculative evidence." *Schubert v. Nissan Motor Corporation in U.S.A.*, 148 F.3d 25, 29 (1st Cir. 1998) (deletion omitted) (quoting *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668, 681 (1st Cir. 1994)). In *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88 (1st Cir. 1993), the United States Court of Appeals for the First Circuit held that the expert affidavits in that case failed to produce "sufficient support for the conclusion that the injury to [the decedent] was caused by the defendant's product." *Hayes*, 8 F.3d at 92. There, the decedent, while sitting in the back seat of a vehicle stopped at an intersection, was hit from behind by another vehicle fitted with a snowplow unit that consisted of a metal lift channel that protruded outward from the front of the truck. *Id.* at 89. The plaintiff's witness, who was an accident reconstruction expert, "used the police report, autopsy report, death certificate, hospital and medical records, depositions, pictures of the accident scene and vehicles, and the study conducted by [an independent company], in order to reconstruct the accident." *Id.* at 92. With that information, the expert opined in his affidavit that

the decedent was struck in the head by sheet metal that had been pushed forward by the lift arm of the snowplow, given that the blow to the head was the same size, shape, and rigidity, there had been no other objects of the like near the decedent's head, and, thus, the defendant's product had caused the injury. *Id.* at 93.

Nevertheless, the court disregarded the expert's affidavit, reasoning that his "bald assertion that no other part of the car or truck had that particular shape is difficult to accept, given that [the expert] never had the opportunity to examine the [car] after the accident." *Hayes*, 8 F.3d at 93. Furthermore, the court stated that the photographs of the car in which the decedent had been seated were not clear enough to establish the size and shape of each piece of the accident wreckage. *Id.* Thus, the court found that the expert had failed to provide any factual details to support his theory, and omitted the affidavit for failing to meet the standards of a Rule 56(e) determination. *See id.* at 92, 93.

Here, Cascione provided the temperatures from the night and early morning prior to Voccola's fall, the size of the snowbank (taken from the photograph), and the low angle of the sun—illustrating the ideal condition for the snowbank to melt, create a pool of water, then freeze. Furthermore, Cascione opined that, given the low angle of the sun, a shadow could have formed over the newly formed ice, making it difficult for Voccola to see any ice as she walked in the Stop & Shop parking lot.

The main problem I see with the Cascione affidavit is that it was based on speculative evidence. Cascione founded his opinion on photographs of a snowbank taken three years after Voccola's fall, and no testimony was provided as to the size or shape of the snowbank on the day of the accident—the pictures merely indicated the same general area where the snowbank was formed. Moreover, he based his opinion in part on Voccola's deposition; and, in that deposition,

when asked about the size and shape of the snowbank, Voccola merely stated that "[i]t must have been in my line of view but I didn't really notice it * * *." Furthermore, Cascione never went to the scene of the accident; as such, he could not determine whether any slopes, elevations, or divots in the pavement could have prevented the alleged black ice from forming in the area where Voccola fell. Finally, Cascione stated that there may have been a shadow, making it difficult to see any ice formation in the Stop & Shop parking lot; however, Voccola directly contradicted that fact in her deposition, when she testified that she did not observe any shadows on the day of her accident.

Based on the above factors, the hearing justice determined that the Cascione affidavit was not competent evidence, thus rendering it inadmissible. As such, she did not consider the affidavit when ruling on the defendants' motion for summary judgment. Because the Superior Court, in the Rule 56 context, views only *admissible* evidence in a light most favorable to the nonmoving party, there was nothing for the hearing justice to weigh when she granted summary judgment in favor of the defendants. *See Bayview Loan Servicing, LLC*, 200 A.3d at 156. From my review of the record in the instant matter, I cannot say that the hearing justice erred in granting summary judgment in favor of the defendants, as neither Voccola's deposition testimony, nor the Cascione affidavit, was competent on the issue of the existence of black ice on the day that Voccola fell.

For the above-stated reasons, I must respectfully dissent.

SUPREME COURT – CLERK'S OFFICE

OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Dolores Voccola v. The Stop & Shop Supermarket Company, LLC et al. v. Xpress Sweeping, Inc. |
| **Case Number** | No. 2017-371-Appeal.<br>No. 2018-136-Appeal.<br>(PC 15-5402) |
| **Date Opinion Filed** | June 11, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Maureen B. Keough |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Richard A. Pacia, Esq. |
| | For Defendants:<br><br>Gino Spinelli, Esq.<br>Stanley F. Pupecki, Esq.<br>James S. D'Ambra, Esq. |