DECISION
Subsequent to a jury trial in which the plaintiffs prevailed, the defendant, Town of South Kingstown (the Town), moves this Court for a judgment as a matter of law and, alternatively, a new trial in the above-entitled case. The defendant, pursuant to R.C.P. 50 (b), timely renewed its motion for judgment as a matter of law and, alternatively, pursuant to R.C.P. 59, made a motion for a new trial. Additionally, defendant moves this Court to amend judgment pursuant to R.C.P. 59 (e). The plaintiffs object to the defendant's post trial motions.
This case arises out of a motor vehicle accident that occurred on October 11, 1988. John Blessing (plaintiff) was unloading debris from the back of his vehicle and depositing it into residential bay 5 at the Rose Hill Transfer Station owned by the town of South Kingstown. Kenneth Leighton (Mr. Leighton), not a party to this lawsuit, tried to back his vehicle into an adjacent bay. Without seeing plaintiff's truck, Mr. Leighton backed into the front of it and pushed it toward the building, crushing plaintiff between the rear of his vehicle and the building. The plaintiff claimed that the town of South Kingstown was negligent in the maintenance of its premises, and that it was foreseeable that a motor vehicle/pedestrian accident was likely to occur on the premises of the transfer station. After trial, a jury determined that the town of South Kingstown was negligent in the maintenance or operation of the Rose Hill Transfer Station and that such negligence W2S a contributing cause of the accident on October 11, 1988. The defendant has now renewed its motion for judgment as a matter of law, arguing that Leighton's action in backing into the plaintiffs' vehicle was an independent intervening cause which relieves the defendant of any liability. The defendant also argues that it did not have any notice of the dangerous conditions that caused the plaintiff's injuries.
The standard for ruling on a motion for a judgment as a matter of law[1] provides that the trial justice view all the evidence in a light most favorable to the adverse party and is obliged to give such party the benefit of all reasonable and legitimate inferences which may be drawn therefrom without weighing the evidence or exercising independent judgment as to the credibility of witnesses; and, if in taking such a view she finds that there exist issues upon which reasonable persons might draw conflicting conclusions, she should deny the motion and the issues should be left to the jury to determine. Palmisciano v.Burrillville Racing Ass'n, 603 A.2d 317 (R.I. 1992); seealso Pickwick Park Ltd. v. Terra Nova Insurance Co.,602 A.2d 515, 518 (R.I. 1992); Kennedy v. Tempest, 594 A.2d 385, 387-88 (R.I. 1991); Pimental v. D'Allaire, 114 R.I. 153, 330 A.2d 62
(1975).
First, the defendant argues that Mr. Leighton's action in backing into the plaintiff's vehicle was an independent intervening cause which relieves the town of South Kingstown of any liability. After thoroughly reviewing all of the evidence presented at trial, as well as the arguments of counsel, this Court finds that reasonable persons could arrive at conflicting conclusions as to the extent of the town's liability, since there was evidence presented at trial to demonstrate that the defendant's negligence contributed to the incident on October 11, 1988 in a variety of ways. For instance, the testimony of Ernest Rabideau of Pare Engineering illustrated that a six inch vertical curb design was originally chosen for the transfer station in part because of its safety features, and that the town was aware of this particular design feature and despite this awareness it changed to a 3 and 1/2 inch angled berm. In addition, there was evidence adduced at trial from Jerrold Baird, Ph.d., P.E., that approximately three times as much force would have been required to push the plaintiff's vehicle up over the six inch vertical curb as was required to push it up the three and one-half inch angled berm.
Furthermore, the plaintiff asserted that the town was aware as early as 1984 that the sidewalk on which the plaintiff was injured was being crossed by vehicles, and the building was hit by vehicles on a regular basis. To support this assertion the plaintiff introduced into evidence a 1984 memorandum from the town's Utilities Director indicating the constant damage to the building from such accidents and suggesting the installation of a series of bollards as a means of preventing vehicles from striking the building. There was also photographic evidence produced at trial to illustrate the `act that although the bollards were installed in 1984, between the time of the installation of the bollards and the time of the plaintiff's accident, most of the bollards were in a state of disrepair and vehicles continued to cross the sidewalk and strike the bollards instead of the building.
It is the defendant's contention that even assuming,arguendo, that the town was negligent in outfitting or maintaining the physical plant, that negligence was not the proximate cause of plaintiff's injuries. Citing D'Ambra v. PeckBuilding Corp., 680 A.2d 939 (R.I. 1996), the defendant asserts that Mr. Leighton's intervening negligent act broke the causal connection between the alleged negligent act of the town to such an extent that the negligence of the town cannot be regarded as the proximate cause of the plaintiff's injuries.
The defendant's reliance upon D'Ambra v. Peck BuildingCorp. , is misplaced. It is a well-established principle that
 "`. . . there may be concurring proximate causes which contribute to a plaintiff's injury and that a defendant's negligence is not always rendered remote in the causal sense merely because a second cause intervenes.'" Hueston v. Narragansett Tennis Club, Inc., 115 R.I. 43, 47, 340 A.2d 125, 127 (1975)).
Accordingly, this Court finds that reasonable persons could draw conflicting conclusions as to the extent that the town's Negligence caused the plaintiff's injuries.
Alternatively, the defendant asserts that the town did not have any notice of the alleged dangerous condition. The record clearly demonstrates otherwise. Evidence presented at trial demonstrated that the defendant had both actual and constructive knowledge of the dangerousness of its premises. Correspondence from the defendant to Pare Engineering illustrated that the town was aware of the original curb design and of the modification of the design. In addition, John Schock, an employee of the town, testified that he made an inspection of the transfer station on a weekly basis. Thus, this Court finds that reasonable persons could conclude that the town did, in fact, have notice of the dangerous conditions alleged to have caused the plaintiff's injuries. Accordingly, the defendant's renewed motion for judgment as a matter of law is denied.
In the alternative, the defendant has filed a motion for a new trial. With respect to a motion for new trial, the rule has recently been amended to conform to the federal rule by allowing such a motion when an error of law has occurred at the trial.
The amended rule 59 (a) states:
 "A new trial may be granted to all or any of the parties and on all or part of the issues, (1) in an action in which there has been a trial by jury for error of law occurring at the trial or for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of this State. . . ."
Thus, in addition to the previous grounds for a new trial, the amended rule provides that "any error of law, if prejudicial, is a good ground for a new trial." Wright, Miller, and Kane,Federal Practice and Procedure § 2805, at 55 (1995).
The defendant avers that regardless of the standard employed by this Court, whether it be according to that set out in R.C.P. 50 (b) for judgment as a matter of law or R.C.P. 59 (c) for a motion for a new trial, the evidence clearly shows that the defendant could not foresee the bizarre chain of events that led to plaintiff's injuries. This Court does not agree. After carefully reviewing all of the evidence of record, along with the arguments of counsel, this Court finds that a new trial is not warranted. Accordingly, the defendant's motion for a new trial pursuant to R.C.P. 59 (c) is denied.
There is also a dispute concerning the amount of prejudgment interest awarded to the plaintiff. Pursuant to R.C.P. 59 (e) the defendant moves to vacate or, in the alternative, to amend or alter the judgment against the town. The issue is whether the present form of the judgment entered on November 1, 1996, erroneously assesses statutory interest against the town and fails to set off the $400,000 in proceeds received by the plaintiff prior to trial in accordance with the Rhode Island Joint Tortfeasor Statute, G.L. §§ 9-31-1 et seq., and the Rhode Island Subrogation Statute.
The State Tort Claims Act provides a limited waiver of a municipality's immunity from suit in tort. Lepore v. RhodeIsland Public Transit Authority, 524 A.2d 574, 575 (R.I. 1987).
Section 9-31-1 of the State Tort Claims Act provides
 "[t]he State of Rhode Island . . . shall . . . be liable in 211 actions of tort in the same manner as a private individual or corporation; Provided, however, that any recovery in any such action shall not exceed the monetary limitations thereof set forth in the chapter."
Further, § 9-31-2 states that recovery against the State or a municipality shall not exceed $100,000.
The defendant relies on Andrade v. State, 448 A.2d 1293
(R.I. 1982). In Andrade, the Rhode Island Supreme Court held that the prejudgment interest statute did not apply to the State.Id. at 1295. The Court noted that a statute waiving sovereign immunity must be strictly construed and whatever right of recovery is to be ascertained against the State must be expressly mentioned in the waiver of immunity statute. Id. at 1294. The Court found that the term "in the same manner as a private individual" as found in the Tort Claims Act referred specifically to liability for damages. Id. at 1295. Further, the Court found that prejudgment Interest was not damages. Id.
The defendant's reliance on Andrade is misplaced. Andrade
did not address the liability of a municipality acting in a proprietary function. In Lepore, the Rhode Island Supreme Court specifically held that prejudgment interest is appropriately awarded "in cases wherein the state is performing function."Lepore v. Rhode Island Public Transit Authority, 524 A.2d 574, 575 (R.I. 1987); See also Materese v. Dunham, No. 95-741-A Slip Op. (R.I. filed February 27, 1997). The plaintiff's case is clearly within the ambit of Lepore and it has already been correctly decided by another justice of this Court that the defendant's activities at the t me of the plaintiff's accident were proprietary in nature. Thus, this Court finds that the assessment of prejudgment interest was correct.
However, there is also the issue of whether the amount of the judgment incorrectly treated the proceeds previously received from Mr. Leighton, who was not a party in this action. Section10-6-1 et seq ., the Contribution Among Joint Tortfeasors Act, provides that "for the purposes of this chapter, the term `joint tortfeasors' means two (2) or more persons jointly or severally liable in tort for the same injury . . . whether or not judgment has been recovered against all or some of them." G.L. 1956 §10-6-2. In order for parties to be joint tortfeasors under the act the parties must be `liable in tort,' meaning to have negligently contributed to another's injury. Lawrence v.Pokraka, 606 A.2d 987, 988 (R.I. 1992) (quoting Wilson v.Krasnoff, 560 A.2d 335, 339 (R.I. 1989)). In addition, to constitute joint tortfeasors under the act, both parties must have engaged in common wrongs. Id.
 "General Laws 1956 * * * § 10-6-7 provides that:
 "A release by the injured person of one (1) joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid."
 "It is well-settled that when a statute is free of ambiguity there is no room for statutory construction and the words will be given their plain and obvious meaning. E.g., Gomes v. Rhode Island State Board of Elections, ___ R.I. ___, 898 A.2d 1088, 1090 (1978); Andreozzi v. D'Antuono, 113 R.I. 155, 158, 319 A.2d 16, 18 (1979); Reardon v. Hall, 104 R.I. 591, 595, 247 A.2d 900, 902 (1968); Kastal v. Hickory House, Inc., 95 R.I. 366, 369, 187 A.2d 262, 264 (1963); Section 10-6-7 is such a statute and must be literally applied."
 Augustine v. Langlais, 121 R.I. 809, 402 A.2d 1187, 1188-89 (1979).
In the case at bar, the plaintiff did not sign a "joint tortfeasor release" with Mr. Leighton and Aetna. The release prepared by Aetna provides a release only to the extent of the consideration paid, $100,000; it does not contain the standard joint tortfeasor release language. See Plaintiff's Exhibit A. Accordingly, the set-off resulting from the $100,000 paid by Aetna and Mr. Leighton is a reduction of $100,000. As a result, the plaintiff's $500,000 damage award is reduced to $400,000.
Lastly, the defendant contends that the amount of the set-off must also include the $300,000 in proceeds that the plaintiff received from Employers Mutual. The town argues that Employers Mutual stepped into the shoes of Mr. Leighton when it paid the $300,000 to the plaintiff. The defendant further argues that the plaintiff must be considered to have received $400,000 from settling joint tortfeasors. The Court finds this argument to be without merit.
Employers Mutual was not responsible for the plaintiff's injury; rather, it paid benefits under an insurance policy to the plaintiff. The Joint Tortfeasor Act provides for contribution from joint tortfeasors. Employers is not a joint tortfeasor since it is not "liable in tort" for the plaintiff's injury. Lawrencev. Pokraka, 606 A.2d 987, 988 (R.I. 1992). Furthermore, any set-off in regard to payment by Employers is inappropriate because of Employers subrogation rights. Employers' policy specifically provides that it has subrogation rights if its policyholder, in this instance Mr. Blessing, later recovers monies from a responsible third party. It is clear that the plaintiff is responsible for the repayment to Employers Mutual of the monies it paid to him from the monies he will recover from the town. Accordingly, the judgment against the town is unaffected by any UM proceeds previously received by the plaintiff from Employers Mutual.
Thus, this court finds that the amount of damages found by the jury, $500,000 must be reduced by $100,000 under the Contribution Among Joint Tortfeasor Act in respect to the money previously paid by Leighton. Interest will be assessed on the resulting $400,000 verdict, and the judgment is not affected by any proceeds previously received from Employers, as Employers is entitled to repayment of those proceeds through its subrogation rights.
Counsel shall submit an appropriate judgment for entry within ten days.
[1] The 1995 revision of the Rhode Island Rules of Civil Procedure abandons former Rule 50's "directed verdict" nomenclature in favor of the term — "judgment as a matter of law." However, this name change does not affect the applicable standard of review. Long v. Atlantic PBS, Inc., et al. ,681 A.2d 249, 252 (R.I. 1996).