USCA1 Opinion

 

United States Court of Appeals
For the First Circuit
 No. 97-1524

 DAVID SCHULTZ,

 Plaintiff, Appellant,

 v.

 YOUNG MEN'S CHRISTIAN ASSOCIATION OF THE
 UNITED STATES OF AMERICA,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Robert E. Keeton, U.S. District Judge]

 Before

 Boudin, Circuit Judge,

Coffin, Senior Circuit Judge,

and Dowd, Senior District Judge.

 Alan J. Rich with whom Farber & Rich LLP, Sarah S. Geer, Marc P. Charmatz, National Association of the Deaf Law Center, Paul F. Kelly and Segal, Roitman & Coleman were on brief for appellant.
 Thomas C. Federico with whom Lee Stephen MacPhee, Edward W. Murphy and Morrison, Mahoney & Miller were on brief for appellee.

March 25, 1998

 
 
 BOUDIN, Circuit Judge. David Schultz brought suit in the
district court against the Young Men's Christian Association of the
United States of America ("the national YMCA") charging that it had
discriminated against him because of his hearing disability. The
district court granted summary judgment in favor of the national
YMCA and Schultz now appeals. We affirm.
 The background events are largely undisputed. Schultz is
deaf unless he makes use of a hearing aid. He is also an
accomplished swimmer and swimming instructor with many years'
experience as a lifeguard; he obtained lifeguard certification from
the American Red Cross in 1979. In 1993, Schultz was hired as the
aquatics director for the Hockomock YMCA in North Attleboro,
Massachusetts, an organization that is independent of the national
YMCA.
 In 1994, Schultz decided to seek lifeguard certification
from the national YMCA. Such certification was neither required
nor suggested by the Hockomock YMCA. Schultz took the necessary
course from one of his own subordinates, Carol Wilson, who happened
to have lifeguard certification from the national YMCA. When
Schultz completed the course, Wilson concluded that he met all of
the national YMCA criteria for certification except for a hearing
requirement.
 Among other criteria, the national YMCA requires for its
certification that a lifeguard be able to hear noises and distress
signals. Wilson asked Schultz for an audiologist's report, and
Schultz furnished one saying that he would have no difficulty
hearing sounds of normal intensity with his hearing aid in place. 
Assuming that Schultz would wear his hearing aid while
lifeguarding, Wilson recommended that the national YMCA certify
him, and it did so in early 1995.
 Soon thereafter, Wilson noticed that Schultz did not
always wear his hearing aid while lifeguarding and observed that
Schultz was unable to hear noises without the hearing aid. Wilson
was further concerned, she said, because she saw Schultz doing pool
maintenance tasks while lifeguarding and turning his back on
swimmers in the pool, including children. In mid-1995, Wilson
asked the national YMCA to remove her name from Schultz's
certification record because of the hearing requirement; the
organization did so in July 1995, thereby revoking Schultz's
certification.
 Several weeks before this revocation, Schultz resigned as
aquatics director and accepted a lower-paid position at the
Hockomock YMCA. This change was due to evaluations of Schultz's
job performance and was unrelated to his loss of national YMCA
certification. Schultz later resigned from his new job but, so far
as appears, Schultz continued to hold Red Cross lifeguard
certification.
 In December 1995, Schultz sued both the national YMCA and
the Hockomock YMCA, setting forth a number of federal and state
claims and seeking $20 million in damages as well as injunctive
relief. However, Schultz confines his appeal solely to his claim
for damages for emotional distress against the national YMCA under
section 504 of the Rehabilitation Act, 29 U.S.C. 794. Its
central provision reads, in pertinent part, as follows:
 No otherwise qualified individual with a
 disability . . . shall, solely by reason of
 her or his disability, be excluded from the
 participation in, be denied the benefits of,
 or be subjected to discrimination under any
 program or activity receiving Federal
 financial assistance . . . .
 After extensive discovery, the national YMCA moved for
summary judgment, primarily arguing that the ability to hear
distress signals was a reasonable requirement for lifeguard
certification. Schultz countered with evidence purporting to show
that a deaf lifeguard was capable of performing lifeguard duties. 
At a pretrial conference, the court granted summary judgment in
favor of the national YMCA, but not upon the main ground urged in
the defendant's summary judgment motion.
 Instead, the district court assumed--correctly, so far as
we know--that the national YMCA did not cause Schultz to lose his
job or otherwise cause him economic damages. Then, focusing upon
the claim of emotional distress, the court said that it knew of no
"precedent that supports the kind of emotional damages that is
being asserted in relation to the cause of action in this setting." 
Alternatively, the court expressed doubt as to whether Schultz's
own testimony as to emotional distress was an adequate basis for
his damage claim.
 Schultz has now appealed to this court, focusing upon the
Rehabilitation Act and his claim for damages for emotional
distress. By contrast, the national YMCA, while defending the
district court's grounds of decision, also urges--as it is entitled
to do, Doe v. Anrig, 728 F.2d 30, 32 (1st Cir. 1984)--that the
judgment is supported by Schultz's lack of qualification. Our
review on the grant of the summary judgment is de novo. Preferred
Mut. Ins. Co. v. Travellers Cos., 127 F.3d 136, 137 (1st Cir.
1997).
 Section 504 of the Rehabilitation Act broadly prohibits
discrimination on grounds of disability under "any program or
activity receiving Federal financial assistance." The national
YMCA concedes that its lifeguard certification program falls within
this quoted language. Deafness makes Schultz an "individual with
a disability" under the statute. 45 C.F.R. 84.3(j). And the
defendant has chosen not to contest the proposition that Schultz's
certification was revoked "solely by reason of . . . his
disability." 
 Nevertheless, the "otherwise qualified" language of
section 504 has been read, ungrammatically but persuasively, to
mean that Schultz could not show a violation of the section if
hearing was an essential function of lifeguarding and thus an
appropriate requirement for lifeguard certification. School Bd. of
Nassau County v. Arline, 480 U.S. 273, 287 n.7 (1987). Doubtless
it is widely supposed that the ability to hear a distress call is
a qualification for lifeguarding: one has in mind the dramatic
picture of the child in a lake waving her arms and calling "help." 
Whether the supposition is correct is a different question. 
 The disability statutes were meant to counter mistaken
assumptions, no matter how dramatic or widespread. Arline, 480
U.S. at 279. And Schultz offered in opposition to summary judgment
the detailed reports of two arguably expert witnesses to support
his position that the ability to hear contributes little, if
anything, to the performance of lifeguarding functions. It was
probably this evidence, more potent than one might expect, that
steered the district court to a different ground of decision.
 One expert report was from Anita Marchitelli, who managed
the aquatics program and the training of lifeguards at Gallaudet
University. She had certified well over 400 deaf lifeguards for
the Red Cross, which has no hearing requirement, and gave several
pages of detailed explanations as to why deafness was not a
handicap for a lifeguard. "In all of my 22 years in working with
deaf individuals," she added, "I have never even heard [from
extensive sources] of any incident or accident causing injury
involving a deaf lifeguard."
 The second opinion, provided by Frank Pia, a consultant
on drowning accident causation, asserted that drowning victims are
almost never in a position to call for help. Pia concluded: "I
know of no scientific research, any documentation, anecdotal
information or expert documentation that tends to show lifeguards
who are deaf or who have a hearing loss are any higher risk than
hearing people as pool lifeguards." Although somewhat more guarded
than Marchitelli--Pia gave some attention to possible "reasonable
accommodations" for the deaf lifeguard--Pia's report generally
supported Schultz's position.
 This evidence is only one side's version of the matter,
and its experts have not been cross-examined. But in the face of
these reports we are not certain that the safety issue could be
resolved on summary judgment, at least on this record. Schultz
also claimed that the national YMCA had made no serious effort to
test or verify whether its "common sense" assumption was true. 
Were this a conventional employment discrimination case, in which
Schultz had been denied a lifeguard job because of deafness, he
might have enough to reach a jury. 
 Of course, in granting certifications the national YMCA
is not hiring employees, nor does it appear that its certification
is either a legal or a practical condition for obtaining work as a
lifeguard. The national YMCA has simply announced criteria that it
thinks appropriate for a lifeguard and offered certification to
those who meet its qualifications. One might even think that there
are free-speech interests at stake or that, at the very least,
there should be greater latitude for a certifying organization to
make judgments about its endorsement than where employment is being
offered, withheld, or substantially affected.
 On the other hand, by choosing to seek federal funds for
its program, the national YMCA has subjected itself to section
504's rather broadly framed obligation not to discriminate against
the disabled. Whether its requirements in granting certification
must be fully correct, and not merely colorable, is a difficult
question. It has not been briefed here or decided elsewhere. We
will thus assume arguendo that at trial its ability-to-hear
criterion might be shown to constitute impermissible
discrimination, whatever that showing might entail.
 This brings us to the district court's actual grounds of
decision. We start with the question whether there was evidence of
emotional damage or, to put the matter technically, whether Schultz
had proffered evidence in a form adequate under the federal and
local rules to present an issue for a jury to consider. To support
his claim, Schultz points to his own deposition testimony of
emotional distress and to a therapist's report indicating that he
suffered depression and anxiety in connection with his loss of
certification. 
 Schultz's own deposition testimony was obviously
competent under the formal requirements of Fed. R. Civ. P. 56(e). 
The more dramatic and detailed version of harm provided by the
therapist's letter was not properly before the court because the
report was not in affidavit form under Rule 56(e) and was not
appended to Schultz's opposition to the motion for summary judgment
as required by local rules. D. Mass. R. 56.1. Yet, without the
report from the therapist, Schultz's own testimony would likely be
evidence enough of emotional damage to avoid summary judgment, even
if a jury might find it self-serving or not worth a significant
award.
 In addition, the summary judgment motion did not, in our
view, give fair warning that the national YMCA was seeking summary
judgment for lack of proof of damage. See Hayes v. Douglas
Dynamics, Inc., 8 F.3d 88, 90 (1st Cir. 1993). While the district
judge was entitled to raise the issue himself at oral argument, it
would be harsh to insist that the plaintiff then and there go
beyond an informal proffer--here, supported by the therapist's
letter--when Schultz had no prior notice that a formal opposition
to summary judgment was required on the issue.
 The district court's main ground of decision was that
damages solely for emotional injury would be inappropriate in this
case. The problem is complicated because the Rehabilitation Act
does not itself contain any express remedy for section 504
violations. It does incorporate the remedies provided under Title
VI of the Civil Rights Act--but Title VI's only express remedy is
a cutoff of federal funding to the affected program. 29 U.S.C. 
794a(a)(2); 42 U.S.C. 2000d-1. Nevertheless, by judicial
construction a private cause of action for injunctive relief and
damages now exists under section 504, qualified by the general
assertion that the remedy must be "appropriate." See Franklin v.
Gwinnett County Public Schools, 503 U.S. 60 (1992).
 Whether damages can be awarded for emotional injury is,
at least nominally, a closer question, because the Supreme Court
has not spoken directly on this point, and the case law reflects a
split of authority. Burgdorf, Disability Discrimination in
Employment Law 554-55 (1995) (collecting cases). Nevertheless,
Franklin was written with considerable breadth, and as a matter of
prediction, it may be a fair guess--we need not rule--that the
Supreme Court might well allow damages for emotional distress under
section 504 in some circumstances. Whether this case is
"appropriate" for such an award is a much closer question.
 Along with its pleasures, life involves many unintended
slights and embarrassments. We have no reason to doubt that
Schultz felt deeply hurt by what he took to be a reflection on his
ability to perform his vocation. But traditionally the courts have
rarely permitted recovery solely for unintended emotional distress
without any attendant physical or economic damage; on the contrary,
such recovery has usually been limited to cases of egregious
behavior presenting a high likelihood of substantial mental injury. 
See Restatement (Second), Torts 436A and comment b (1965); W.
Keeton, Prosser and Keeton on Torts 54, at 361-62 (5th Cir.
1984).
 This limitation is only one of a number of court-crafted
doctrines, seeking to assure that damage remedies do not get
completely out of hand. Other examples include concepts of
proximate cause in tort law, Palsgraf v. Long Island R.R. Co., 162
N.E. 99 (N.Y. 1928); standing limitations, Illinois Brick Co. v.
Illinois, 431 U.S. 720, 746 (1977); and restrictions under maritime
law on economic damages, Barber Lines A/S v. M/V Donau Maru, 764
F.2d 50, 51-52 (1st Cir. 1985). Here, the Supreme Court's
reference in Franklin to "appropriate" remedies makes us all the
more cautious in exceeding the bounds of past practice.
 In this case, Schultz has made no claim that he has
suffered any direct economic loss, either from the national YMCA's
standards or from withdrawal of his certification. Nor has he
suggested that certification is either in legal or practical terms
a condition of obtaining lifeguard employment. Compare Allied Tube
& Conduit Corp. v. Indian Head, Inc., 486 U.S. 492 (1988). He says
only that he is entitled to several million dollars for emotional
distress because under the national YMCA's standards, he is not
entitled to certification.
 Schultz's position is very little different from that of
any deaf lifeguard who could claim at large to be offended or
distressed by what may be an over-rigid criterion adopted by one
certifying organization (the national YMCA) but not by others
(e.g., the Red Cross). It happens that Schultz did obtain
certification and later had it withdrawn. But certification was
obtained, and then lost, based upon Schultz's indirect
representation that he would wear a hearing aid. Otherwise,
Schultz remains someone who simply does not meet the national YMCA
criteria.
 There is not the slightest hint that the national YMCA
was prompted by malice or hostility toward him or toward the
disabled. On the contrary, whether or not it erred in its
judgment, its concerns--for the safety of swimmers and the
reliability of its endorsement--were legitimate. This is not a
case where damages for emotional distress can be justified to
punish patent misbehavior or the deliberate infliction of
humiliation.
 We do not hold that damages for emotional injury are
precluded in all cases under section 504. The situation might be
different if there were some sign of actual animus toward the
disabled; to call the defendant's action "intentional," as Schultz
does, is hardly the same thing. A claim for injunctive relief to
secure certification might also have been available if Schultz had
chosen to pursue it, instead of narrowing his action into a test
case for damages.
 The Rehabilitation Act, like similar federal and state
disability statutes, deserves sympathetic enforcement by the
courts. But, as in all things, a balance must be struck. The
national YMCA's standards are not automatically immune simply
because they were adopted in good faith or based on widespread
assumptions. But an award of damages for emotional distress, in a
debatable case on the merits with no animus or other concrete
impact, strikes us as a distortion of remedial relief.
 Affirmed.