Sarita J. SILVA; Miguel A. Gonzalez,
and the Conjugal Partnership
composed thereof, Plaintiffs,

v.

AMERICAN AIRLINES, INC., Defendant.

Civil No. 94–2642(JAF).

United States District Court,
D. Puerto Rico.

April 16, 1997.

Richard Schell–Asad, Francisco Troncoso, Troncoso & Becker, San Juan, for Plaintiffs.

Ricardo L. Ortiz–Colon, Diego A. Ramos, Fiddler Gonzalez & Rodriguez, San Juan, for Defendant.

## OPINION AND ORDER

FUSTE, District Judge.

This case involves a personal injury action against American Airlines, Inc., filed by plaintiffs Sarita J. Silva and her husband Miguel A. González. American Airlines has filed a motion for summary judgment. The facts are as follows.

On September 29, 1994, plaintiff Silva, a Deputy U.S. Marshal, boarded an American Airlines Boeing 727–200 in Philadelphia, bound to San Juan. The Deputy U.S. Marshal was traveling on official business of the

United States, transporting prisoners. Ms. Silva sat in row number 29, seat F, a window seat. Row 29 differs from the other rows of the coach cabin in that it is located immediately behind one of the emergency exit aisles. The exit aisle is twenty-five-and-a-half inches wide, while the average row has a width of approximately nine inches. Row 29 offers extra legroom and is a preferred seat for seasoned commercial travelers. Overhead bin compartments are installed directly above the seat rows, running the length of the aircraft fore to aft. When Ms. Silva stood up from her seat to deplane in San Juan, she hit the overhead bin located over seat 29–F with her head, allegedly herniating several intervertebral discs. Plaintiffs have sued American Airlines for the injuries sustained by Ms. Silva on product liability and general negligence grounds.

A *Daubert* hearing was conducted to weigh the qualifications of plaintiffs' expert witnesses before the determination of defendant's summary judgment motion. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

## I.

### Qualification of Expert Witness

#### A. The Daubert Standard

A trial judge "enjoys broad discretion in determining the admissibility of expert testimony." *United States v. Montas,* 41 F.3d 775, 783 (1st Cir.1994). *See also United States v. Kayne,* 90 F.3d 7, 11 (1st Cir.1996). Fed.R.Evid. 702 permits the admission of expert testimony covering "scientific, technical, or other specialized knowledge [which] will assist the trier of fact to understand the evidence or to determine a fact in issue." *See Daubert,* 509 U.S. at 589, 113 S.Ct. at 2794 (emphasis omitted); *Bogosian v. Mercedes–Benz of North America,* 104 F.3d 472, 476 (1st Cir.1997).

Rule 702's requirements consist of three distinct but related requirements. First, the expert must be qualified to testify as an expert by "knowledge, skill, experience, training, or education." Fed.R.Evid. 702; *see also United States v. Paiva,* 892 F.2d

148, 160 (1st Cir.1989). Second, the expert's testimony must concern "scientific, technical or other specialized knowledge." Fed. R.Evid. 702; *Daubert,* 509 U.S. at 589–90, 113 S.Ct. at 2795. Third, the proposed testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702; *see also Daubert,* 509 U.S. at 589–90, 113 S.Ct. at 2794–95; *United States v. Shay,* 57 F.3d 126, 132 (1st Cir.1995).

In addition, the *Daubert* standard has Rule 56(b) implications. While nonmovants may rely on the affidavits of experts in order to defeat a motion for summary judgment, such evidence is not a free pass to trial every time that a conflict of fact is based on expert testimony. When an expert presents nothing but conclusions—no facts, no hint of an inferential process, no discussion of hypotheses considered and rejected, such testimony will be insufficient to defeat a motion for summary judgment. *Hayes v. Douglas Dynamics, Inc.,* 8 F.3d 88, 92 (1st Cir.1993).

#### B. Qualifications and Opinions of Mr. Emiliano H. Ruiz

Plaintiffs' expert, Mr. Emiliano H. Ruiz, is a civil engineer. He concludes that plaintiff Silva sustained injuries when her head hit the overhead bin compartment. Mr. Ruiz claims that the compartments are strong structures designed to carry baggage weight. These compartments are rigged by internal rigid brackets that serve as the "skeleton" of the overhead bin compartment's long structure running fore to aft in the airplane. The rigid brackets supposedly make the bins very sturdy, not allowing them to deflect if a passenger's head hits the structure. He claims that this rigidity is enhanced by the weight the bins carry, creating a hazard against which American Airlines should have warned plaintiff Silva. Mr. Ruiz also testified that because seat 29–F is located in the emergency exit aisle, with a twenty-five-inch space in front of it, passengers sitting there have more legroom. This extra room gives them a false sense of spaciousness which tends to confuse the passenger into forgetting about the presence of the overhead bins. Mr. Ruiz opines that defendant should have

warned passengers about the low ceiling under the bins, specially when passengers sit on window seats.

■ Mr. Ruiz' expert witness testimony is inadmissible under *Daubert*. Mr. Ruiz has a Bachelor's and Master's degree in Civil Engineering. As a civil engineer, Mr. Ruiz is trained in that branch of engineering which is concerned primarily with public works, land surveying, and the building of highways, bridges, waterways, harbors, railroads, and airports. Mr. Ruiz is trained in safety aspects proper of civil engineering. As revealed during questioning of Mr. Ruiz, this case was the first for which he has served as an expert witness with regard to aircraft design. Prior to the writing of his statement, he had no experience in the design, manufacturing or operation of an aircraft. Although he examined the seat used by plaintiff and the overhead compartment in light of his engineering background, he had never before analyzed the ergonomics of seating and overhead compartment arrangements of aircraft interiors.

Although Mr. Ruiz' background might permit him to learn faster than others about the design and safety aspects of an aircraft's interiors, an expert must have specific knowledge, not mere capacity to acquire knowledge. To qualify to provide expert testimony in this case, an expert must have specifically worked with, tested or in some fashion studied aircraft interior safety hazards and warnings. *Bogosian*, 104 F.3d at 477.

Before his involvement in this case, Mr. Ruiz had never tested or studied the safety hazards of an aircraft's interior design, nor has he any formal training in aircraft safety measures and warnings. As he has testified, he had never examined the interior structure of an airplane with regard to its safety aspects and hazards. Thus, Mr. Ruiz fails to meet the *Daubert* requirements on his lack of qualifications alone.

■ Even if he were qualified, his opinions on aircraft safety measures and hazards are purely speculative—they have no scientific basis. For example, he proposes that the hidden internal rigid bracket skeleton that holds and supports the overhead bins create an extremely dangerous condition for passengers when they arise from their seats because the bin structure is sturdy and does not deflect if hit. This type of opinion, completely lacking in scientific basis, does not meet the standards of *Daubert*. Mr. Ruiz questions the seating and overhead compartment arrangements that are common to the aircraft industry without proffering a scintilla of scientific evidence to show that a safer alternative system is viable. We, therefore, find that Mr. Ruiz' testimony in support of the opposition to the motion for summary judgment does not meet the *Daubert* standard and cannot be considered to create a conflict of material fact in the evaluation of the instant Rule 56 dispositive motion. *Hayes*, 8 F.3d at 92.

### C. Qualifications and Opinions of Mr. Joseph Palm

Mr. Joseph Palm is a former airline flight attendant who logged thousands of hours of flight while working for American Airlines in Boeing 727–200 aircraft. Mr. Palm qualifies as a lay witness under Fed.R.Evid. 701 and his involvement with the Boeing 727–200 may qualify him to state lay opinions if such opinions are well-founded on personal knowledge and are susceptible to cross-examination. *Paiva*, 892 F.2d at 157.

■ For opinion testimony of a lay person to be admissible, three elements must be present: (1) the witness has personal knowledge of the facts from which the opinion is derived; (2) there is a rational connection between the opinion and the facts upon which it is based, and (3) the opinion must be helpful in understanding the testimony or determining a fact in issue. *Swajian v. General Motors Corp.*, 916 F.2d 31, 36 (1st Cir. 1990).

■ At the *Daubert* hearing, Mr. Palm testified that while it is common for many passengers to hit the overhead bin with their heads as they exit their seats, this is particularly true for those sitting in seat 29–F because that seat is located in an aisle wide enough to allow them to stand up without the restrictions of the narrower space between other rows. Such Rule 701 opinion by Mr.

Palm is rationally based on his observations as a flight attendant for more than a decade. Accordingly, this court recognizes that it could consider his opinion for the limited purpose of describing the internal configuration of the aircraft as it relates to the frequency with which passengers strike their heads against the overhead bin compartments. However, Mr. Palm is proposed as a Rule 702 expert and this court cannot go that far by certifying Mr. Palm as an opinion expert witness.

Mr. Palm goes beyond Rule 701 and agrees with engineer Ruiz, a Rule 702-proposed expert, that American Airlines should have alerted passenger Silva about the existence of the overhead bin compartments and about the fact that her ample legroom in seat 29–F could create a false sense of amplitude which would tend to have the passenger forget about the overhead bin compartment. As stated before, Mr. Palm bases his opinion on the fact that it is common for occupants to strike their heads against the overhead bin compartments when getting up from the seat, especially in seat 29–F. But, like Mr. Ruiz, Mr. Palm's testimony is not within the ambit of Fed.R.Evid. 702. From 1967 to 1971, Mr. Palm worked for several airlines in different capacities ranging from ticket agent to flight attendant, and, thereafter, as a flight attendant with American Airlines until 1992.

Although an experienced flight attendant is well-versed and trained in a particular aircraft and its emergency procedures, he has no specialized knowledge, beyond the opinions to which he is entitled under Rule 701, that can be proffered under Rule 702, as an expert witness, to assist the trier of facts in determining whether or not defendant should have warned passengers about the risk of hitting the overhead bins.

■ Mr. Palm has no experience in the design, manufacturing or operation of an aircraft that would allow him to determine what, if any, warning practices would be appropriate. He suggests placing some padding in the overhead bin to minimize the danger of a serious injury, but does not explain how he scientifically arrived at this conclusion. Mr. Palm's testimony is simple speculation about the possible solutions to this alleged safety hazard, and does not, therefore, meet the *Daubert* test.

As in the case of Mr. Ruiz, Mr. Palm's opinions, given in support of the opposition to the motion for summary judgment, do not meet the *Daubert* standard and cannot be considered as creating a conflict of material fact in the evaluation of the instant Rule 56 dispositive motion. *Hayes,* 8 F.3d at 92.

## II.

### *Other Legal Standards*

#### A. *Summary Judgment Standard*

The familiar purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990) (quoting Fed.R.Civ.P. 56 advisory committee's note). Therefore, if the pleadings, depositions, answers to interrogatories, admissions, and any affidavits on file show that there is no genuine issue as to a material fact, then the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Where the moving party does not have the burden of proof at trial, that party must make a showing that the evidence is insufficient to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the initial showing has been made, it is up to the nonmoving party to establish the existence of a genuine disagreement as to some material fact. *United States v. One Parcel of Real Property with Bldgs.,* 960 F.2d 200, 204 (1st Cir.1992). In this context, "genuine" means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a "material fact" is one which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 258, 106 S.Ct. 2505, 2510, 2515, 91 L.Ed.2d 202 (1986). Throughout this analytical process, any doubt as to the existence of a genuine issue of fact should be resolved against the moving party, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–

59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970), and courts "must view the evidentiary record in the light most hospitable to the nonmovant and must indulge all reasonable inferences in his favor". *Sheinkopf v. Stone,* 927 F.2d 1259, 1262 (1st Cir.1991); *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir. 1990).

## B. *Puerto Rico Product Liability Law*

■ Puerto Rico's product liability law provides for three kinds of product liability actions: Those for a defective design, manufacture, or for insufficient warning. *Rivera Santana v. Superior Packaging, Inc.,* 92 J.T.S. 165, pp. 10159, 10164 (1992). A plaintiff will prevail on a defective design theory if it proves that (1) the product failed to behave in a safe manner as an ordinary user would have expected in its intended or foreseeable use, or (2) that the design of the product was the proximate cause of the damages and the defendant failed to prove in the balance of interests, that the benefits of the design outweigh the inherent risks of the product. *Id.* A manufacturing defect is one in which the product "fails to match the average quality of like products." *Id.* An insufficient warning also constitutes a product liability case. *Id.*

■ Even if plaintiff cannot prove that the design was defective, she might still prevail if she demonstrates that defendant failed to provide plaintiff with the necessary warnings and instructions which are adequate in view of the risks and dangers generated as a result of the use of the product. *Id.* The duty to warn extends to all the uses that can be reasonably foreseen by defendant. *Id.* The omission to provide warnings is a basis for the application of liability, if the defendant knew, or should have known, of the danger or risk involved, and the need to warn in order to assure the safest use of the product. *Id.*

## III.

### *Final Analysis and Conclusion*

Plaintiffs claim that a design defect allegedly existed and that defendant should have warned plaintiff Silva about it. After looking at the present record in the light most favorable to plaintiffs, we find no material issue of fact requiring jury submission. Plaintiffs allege that Ms. Silva was seriously injured when she hit her head against the overhead bin. Since this is a claim for damages allegedly caused by a defective product, plaintiffs must facially demonstrate that the product was either defectively designed, defectively manufactured, or lacked the necessary warning. *Id.*

■ The factual inquiries in this case are actually technical or scientific: Was the coach cabin defectively designed by placing overhead bin compartments above the seats and above the exit aisle and seat 29–F? Did the hidden rigid bracket supporting system that strengthens the overhead bin compartments present a hazard by making the structure too rigid of which American Airlines should have warned plaintiff? These technical questions may not be answered by mere anecdote. To prove a design defect, plaintiffs need to provide a scientific explanation of how the coach cabin and the overhead bin compartments were poorly designed. *Id.* Here, there is no competent scientific analysis of the compartment or seating arrangement in question nor of how coach cabins and overhead bin compartments should be designed. Plaintiffs' counsel relies on Emiliano Ruiz and Joseph Palm's opinions of the safety hazard created by the defective seating, spacing, and overhead compartment arrangements of the aircraft. A scientific veneer, based on no testing or studies, is not enough to have these opinions pass muster.

Whatever hazard the height, rigidity, and weight-bearing capacity of the overhead bin compartments may pose to passengers is apparent and obvious. One of the most noticeable features of modern commercial airliners is the overhead bin compartments that run through both sides of the main cabin, all the way from first class to the aft section of the aircraft. These compartments are located on top of passenger seats and are mainly used to store passenger carry-on luggage. Because they are low-hanging, for ease of access, passengers many times must gingerly get up from their seats, in order to avoid hitting their heads against the compartment. Notwithstanding the obvious position of an

**534**

aircraft's overhead compartment, passengers occasionally hit their heads against the low-lying compartments. Plaintiff Silva's accident is, as Mr. Palm has testified, not an unusual occurrence. American Airlines is not liable for damages caused by a structure that is easily perceived at a glance every time one boards an airplane. *See Torres v. Municipality of Mayaguez,* 111 P.R.R. 206 (1981). Plaintiffs, regardless of the inadmissibility of the expert testimony, do not have any scientific or technical refutation of this analysis.

For the above reasons, plaintiffs' case fails, since "summary judgment [is] appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation". *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990); *Hayes v. Douglas Dynamics, Inc.,* 8 F.3d 88 (1st Cir.1993). Plaintiffs' case is built on such unsupported speculation and we, thus, **GRANT** the motion for summary judgment.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**