Luis Adrian RIVERA POMALES,
Marisell Sierra, Plaintiffs,

v.

BRIDGESTONE FIRESTONE,
INC., Defendants.

Civ. No. 02–2324(JP).

United States District Court,
D. Puerto Rico.

Aug. 22, 2003.

Michelle Pirallo–Di Cristina, José A. Gallart, San Juan, PR, for Plaintiff.

Salvador Antonetti–Zequeira, Fiddler, González & Rodríguez, San Juan, PR, Lee Philip Teichner, Holland & Knight, LLP, Miami, FL, for Defendant.

---

## AMENDED OPINION AND ORDER

PIERAS, Senior District Judge.

### I.  Introduction

The Plaintiffs filed the current Complaint on August 20, 2002, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332 [1]. Plaintiffs Dr. Luis Rivera–Pomales and Marisell Sierra, his wife, brought a product liability action against Defendant [2]. Co-Plaintiff Rivera claimed physical and emotional damages stemming from a car accident he had on August 30, 2001. Co-Plaintiff Rivera was driving his model-year 2000 Ford Excursion on Highway No. 52 in Salinas, Puerto Rico en route to Ponce. Plaintiffs allege that a tire, defectively manufactured by Defendant Firestone, "failed," causing Co-Plaintiff Rivera to lose control of his vehicle, skid and eventually struck the metal barrier that separates the opposing lanes of traffic.

Co-Plaintiff Rivera claims he suffered bruises on his chest, face, arms and legs, had sutures in his left leg, and suffers from headaches, back pains, and emotional damages. Co-Plaintiff Sierra was not in the car and did not observe the accident and claims emotional damages she allegedly suffered as a result of her husband's car accident.

Defendant, Bridgestone–Firestone, Inc., contends that the vehicle's SteelTex A/T tire was not defective in design or manufacture.

Firestone contends that the damage to the tire was caused during the accident sequence, and that the accident was not caused by a tire failure or blowout. Firestone contends that Co–Plaintiff Rivera was driving in excess of the legal, posted speed limit when he lost control of the vehicle, left the paved roadway, and struck a concrete and metal barrier which then damaged the subject tire.

Trial for the case began on August 11, 2003. The Court utilizes this current Amended Opinion as an opportunity to combine a variety of written and oral Orders rendered by this Court during the course of trial [3]. At the heart of this Opinion lies Plaintiffs' motion to strike Defendant's witness, Dr. John F. Wiechel, due to Defendant's failure to include a copy of Dr. Wiechel's *curriculum vitae* with his expert report; Defendant's motion to disqualify Plaintiffs' expert, Dr. Carlos Reoyo, from testifying at trial, and ultimately Defendant's motion under Rule 50 of the Federal Rules of Civil Procedure for Judgment as a Matter of Law. The Court addresses each of these motions in turn.

### II.  Discussion

#### A.  Exclusion of Defendant's Expert Witness Dr. John F. Wiechel

Plaintiffs brought to the Court's attention that Defendant had failed to include a copy of Dr. Wiechel's *curriculum vitae* with the submission of his expert witness report and requested that the Court exclude him and his report from being presented at trial due to Defendant's failure to comply with this Court's orders and the Federal Rules of Civil Procedure. Defendant argues that its failure to include a copy of Dr. Wiechel's *curriculum vitae* was a harmless error and that Plaintiffs could have and should have requested the same from Defendant the moment it was

---

1. The Court denied Defendant's motion to dismiss Plaintiffs' claims for not filing a claim that could clear the statutory minimum under the requirements of diversity jurisdiction on the eve of trial (docket No. 72).

2. The Court **NOTES** that Ford Motor Company was Co–Defendant in the original caption of this Complaint. However, Plaintiffs voluntarily dismissed their claims against Ford on December

10, 2002 (docket No. 14) and this Court entered a Partial Judgment accordingly (docket No. 15). Therefore, the only surviving claim was the one held against Co–Defendant Bridgestone–Firestone, Inc. which will henceforth be considered the only Defendant in the current action.

3. Including docket Nos. 92 and 97.

realized that it was not included with Dr. Wiechel's expert report.

This Court's Initial Scheduling Memorandum states that, "Defendant **SHALL** tender a copy of its expert witness(es) report(s) to Plaintiff, in accordance to Rule 26 of the Federal Rules of Civil Procedure, on or before **April 1, 2003** (docket No. 22)."

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure states that as part of the expert witness report a party shall include:

the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years ... and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed.R.Civ.P. 26(a)(2)(B). Typically, this notice is made by tendering a copy of the expert's *curriculum vitae.* It is accepted that Defendant failed to include a copy of Dr. Wiechel's curriculum vitae with Dr. Wiechel's expert report, and it did not include any information in substitution of Dr. Wiechel's *curriculum vitae.*

Furthermore, the Court addressed its expectations concerning the use of expert witness testimony in its Initial Scheduling Conference Call (docket No. 12):

Any party wishing to use expert witnesses shall submit a report from each expert witness to opposing counsel and to the Court. Such report shall be signed by the expert and shall contain the expert's findings, the relation of cause and effect, and if dealing with a medical condition, a statement as to the diagnosis and prognosis. The Court expects that at least Plaintiff's attorney shall have these reports ready by the Initial Scheduling Conference. Each report shall also include:

1) A complete statement of all opinions to be expressed by the expert and the basis for those opinions.

2) The data or other information considered by the expert to form her opinions.

3) Exhibits to be used to summarize or support the opinions.

4) A curriculum vitae and an explanation of the expert's qualifications.

5) A list of all cases in which the expert testified at trial or by deposition in the last four years.

6) Disclosure by the expert of her business practice; whether the expert is a practicing physician, a scientist conducting research, or otherwise engaged. In general, is she a practicing professional in one particular area or is she engaged exclusively as an expert; if engaged as an expert, what percentage of her professional time is she so engaged.

The Court further advises the attorneys that the information the expert is to give cannot be sketchy or vague. **If the report of the expert is not as described herein, the expert's testimony will not be permitted on direct examination.**

The Court finds that it is substantially important for an opposing party to be given the *curriculum vitae* of the opposition's expert witness. This is so for a number of reasons. First, the facts pertaining to the expert's educational background are essential (e.g. to study the worth of the expert; the opportunity to revise through investigation the truth of such alleged facts; the worth of the University where the expert studied; the research conducted in the University pertaining to the subject in which the expert intends to speak; for discovery of professors at the University, and possible contrary statements by those professors). Second, the importance of knowing the expert's *experience* in this field (e.g. the companies and business the expert has worked with; the bias of these business pertaining to this particular subject matter; whether such associations are for or against the stand taken by the industry or by consumer groups). This would trigger even further investigation by the opposing party and the possibility of disclosure of material, which would bear upon the qualification of the expert. Third, what associations or universities the expert belongs to; the studies published and unpublished by the expert; the journals, thesis, and books which would speak upon the subject matter of the report, and upon cross

examination, would disclose other opinions given by the proposed expert. Finally, the expert's previous expert testimony given in Court, as this may disclose the bias of the expert or the kind of association he has with the industry economically.

■ Federal Rule of Civil Procedure 37(c)(1) deals with Failure to Disclose; False or Misleading Disclosure; Refusal to Admit and states in pertinent portion as follows:

A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions...

Fed.R.Civ.P. 37(c)(1). In reaction to this Rule, Defendant argues that Plaintiff merely needed to request a copy of Dr. Wiechel's curriculum vitae upon discovery that it was not included with the expert report. However, the Court finds that Plaintiff did not have a duty to further request the curriculum vitae, especially after it was specifically ordered by the Court. "The sanction is automatic in the sense that there is no need for the opposing party to make a motion to compel disclosure, as authorized by Rule 37(a)(2)(A) in order to compel a further disclosure, as a predicate for imposition of the sanction of exclusion." *Wright, Miller & Marcus,* 8A Federal Practice and Procedure: Civil 2d § 2289.1.

■ This does not mean that Defendant is without remedy. The Court must now determine whether Defendant's reason for failing to include Dr. Wiechel's curriculum vitae was "substantially justified" and whether such failure to include should be considered "harmless" by the Court. The First Circuit has held that under "Rule 37(c), the district court's latitude is wide." *Ortiz–López v. Sociedad Española de Auxilio Mutuo Y Beneficiencia de Puerto Rico,* 248 F.3d 29, 34 (1st Cir.2001) (citing *Poulin v. Greer,* 18 F.3d 979, 984 (1st Cir.1994)).

The Court does not believe that Defendant's failure to disclose was harmless. Certainly, the fact that disclosure of a *curriculum vitae* has been included as one of the pivotal rules of pretrial discovery and procedure identifies it as an essential disclosure to an opposing party for its ability to study the value of the experts scientific testimony. The failure to disclose has deprived Plaintiffs of a fair opportunity to show their own expert a copy of the *curriculum vitae* and discuss it with him and for use in preparation of their expert, pretrial motions, interrogatories and depositions, and investigation through other sources, as well as general preparation for trial. The fact that Plaintiffs have chosen not to depose Defendant's expert witness does not eliminate the fact that Plaintiffs were deprived of the opportunity to utilize this information in preparation for trial, as described above.

This is particularly important in the scenario of the Rules of Civil Procedure pertaining to expert testimony where ultimately, if admitted by the Court, the instruction to the jury would be that such expert has specialized knowledge and study of the subject matter and that the jury must give appropriate weight to his opinion. It is for this reason that the Court finds that Defendant was not substantially justified in its omission. The importance of this trial is great. The Court recognizes the precedential value of such a case in the tire industry. The Court must be very selective in its analysis and must be even handed in its application of the law. Ultimately, this Court takes the Rules of Civil Procedure very seriously and finds that a liberal application of their mandates could be the first step upon a perilous path. This Court chooses to stay the course and follow the letter of the law. For this reason, the Court hereby **STRIKES** Dr. Wiechel's expert testimony for Defendant's failure to include a copy of Dr. Wiechel's *curriculum vitae* with his report in clear violation of this Court's Orders and Rule 26(a) of the Federal Rules of Civil Procedure.

### B. Exclusion of Plaintiffs' Expert Witness Dr. Carlos Reoyo

■ On August 11, 2003, the Court held a *voir dire* pursuant to Rule 104 of the Federal

Rules of Evidence in order to determine the admissibility of Plaintiffs' proposed expert's testimony. The Court heard Dr. Carlos Reoyo's testimony concerning his qualifications to be able to testify in the current litigation and the methodology utilized by him while examining the subject tire.

At the closing of his testimony, Defendant moved for the Court to strike Dr. Reoyo's testimony, as he had failed to satisfy the standards for expert testimony set forth by Rule 702 of the Federal Rules of Evidence, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), and a number of other circuit and district court opinions. In opposition, Plaintiffs argued that by applying the standard set forth by the Supreme Court in *Daubert* the Court should look at Rule 702 exclusively and that Dr. Reoyo's testimony did in fact clear the hurdle set forth by the Federal Rules of Evidence.

The Supreme Court's decision in *Daubert* emphasizes that Federal Rule of Evidence 702 requires trial courts to serve as evidentiary "gatekeepers" who must conscientiously screen expert testimony for relevance and reliability. This requires the court to ensure that such expert testimony constitutes "good science" (*Daubert,* 509 U.S. at 593, 113 S.Ct. at 2797) and that findings are sufficiently "derived by the scientific method" or otherwise "supported by appropriate validation." *Daubert,* 509 U.S. at 590, 113 S.Ct. at 2795. As all parties have agreed that Rule 702 is one of the applicable standards and Defendant has moved for exclusion under that Rule, the Court shall first apply the standard set forth by Rule 702, in its decision on the admissibility of Dr. Reoyo's testimony.

Rule 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if

(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. Concerning the first step, the Court will assume that Dr. Reoyo's testimony would be based upon sufficient facts or data, as Dr. Reoyo had the subject tire available to him for examination. However, the Court does **NOTE** that Dr. Reoyo's scientific investigation appears to have been limited to a mere visual inspection of the subject tire and not of the vehicle or of the site of the accident, with the exception of photographs. Nevertheless, the Court will allow Plaintiffs' witness to survive the first hurdle.

The second step, to this Court, is where the proverbial rubber hits the road[4]. Dr. Reoyo, during his testimony, specifically stated that he was not a tire expert, that he did not use any common methodology or protocol in examining the subject tire, that, in fact, some of the common protocols were "silly" and finally, he did not present any evidence supporting the use of his methodology or any of his theories applied in the rendering of his opinion. The Court finds this testimony to be quite telling. While Dr. Reoyo may have utilized the "scientific method" to examine the subject tire, he most certainly did not use "reliable principles and methods" that are commonly utilized in the study of tires. The Court finds this to be a fatal flaw in his testimony. The Court cannot allow for a mechanical engineer to render an expert opinion merely because he is a mechanical engineer. The Court must instead look as to whether his or her theory can be and has been tested, whether it has been subjected to peer review and publication, what is the known rate of error with the theory and if the theory is generally accepted. *See Daubert,* 509 U.S. at 593–595, 113 S.Ct. at 2796–2797; *Kumho Tire,* 526 U.S. at 149, 119 S.Ct. at 1175.

The Court finds it necessary to address one further issue, although it is not necessarily applicable to Dr. Reoyo. The Court has held previously that general knowledge of

4. Pun intended.

engineering does not an expert make. *See Tokio Marine and Fire Insurance, Co. Ltd. v. Grove Manufacturing Co.*, 762 F.Supp. 1012, 1016 (D.Puerto Rico 1991) (J. Pieras). The Court notes that far too frequently in the current legal system the use of professional expert witnesses has become rampant. That is to say, that instead of utilizing professionals that work in a specific field to comment and give learned opinions on certain subjects, attorneys turn to "guns for hire" whose main job or means of living is generated from giving expert testimony. The Court fears that this trend will result, if it has not already resulted, in supposed experts not utilizing scientific methods to render an opinion but rather by twisting scientific methods to produce a result that will support the case of those footing the bill. The Court warns the parties that this type of witness will be scrutinized with a highly critical eye in order to preserve the sanctity of the common law legal system.

In conclusion, the Court finds that Dr. Reoyo's opinion has not been substantiated by any peer reviewed methodology and may not be utilized in the current trial. For this reason, the Court hereby **STRIKES** Dr. Reoyo's expert testimony and report from being used in this trial.

## C. Judgment as A Matter of Law

After Plaintiffs' expert witness was excluded in open court, Plaintiffs rested their case. Subsequently, Defendant moved for judgment as a matter of law arguing that Plaintiffs could not prove that Defendant's tire was the legal cause of Plaintiffs' injuries. Plaintiffs did not oppose Defendant's motion.

Before ruling on a Motion for Directed Verdict pursuant to Federal Rule of Civil Procedure 50(a), the Court notes from the outset that the standard of review is based upon the weight and sufficiency of the evidence. The Court must evaluate whether the evidence is sufficient to create an issue of fact for the jury. The evidence must permit thoughtful fact finders to reach but one reasoned conclusion. *Wagenmann v. Adams,* 829 F.2d 196, 200 (1st Cir.1987). The act of evaluating the evidence does not permit the Court to weigh the evidence or pass on the credibility of witnesses. Furthermore, the evidence must be examined and the inferences reasonably extracted therefrom, in the light most hospitable to the nonmovant. Yet, a "mere scintilla" of evidence is not enough to forestall a directed verdict. *Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076 (1st Cir.1989); *Desfosses v. Wallace Energy*, 836 F.2d 22 (1st Cir.1987). This use by the First Circuit of the "scintilla of evidence" standard was reaffirmed by the United States Supreme Court in *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addition *Anderson* held that a judge must consider substantive evidentiary standards that apply to the case, in determining whether the plaintiff has produced sufficient evidence to warrant submission of the issue to the jury. *Id.*

Puerto Rico's product liability law provides for three kinds of product liability actions: those for a defective design, manufacture, or for insufficient warning. *Silva v. American Airlines, Inc.*, 960 F.Supp. 528 (D.Puerto Rico 1997) (citing *Rivera Santana v. Superior Packaging, Inc.*, 1992 P.R. Sent. 165, pp. 10159, 10164 (1992)). A plaintiff will prevail on a defective design theory if it proves that (1) the product failed to behave in a safe manner as an ordinary user would have expected in its intended or foreseeable use, or (2) that the design of the product was the proximate cause of the damages and the defendant failed to prove in the balance of interests, that the benefits of the design outweigh the inherent risks of the product. *Id.* A manufacturing defect is one in which the product "fails to match the average quality of like products." *Id.* An insufficient warning also constitutes a product liability case. *Id.* This Court held that a directed verdict can only be granted if a plaintiff has failed to produce sufficient evidence that the alleged manufacturing defects were the proximate cause of the plaintiff's damages under the strict liability theory. *See Tokio Marine,* 762 F.Supp. at 1014. As Plaintiffs' only expert witness has now been stricken, the Court sees that there is an impossibility of the Plaintiffs proving that there was a defect and that such defect was the "legal cause" of Dr. Rivera's accident. For this reason, the

**296**

Court hereby **GRANTS** Defendants' Rule 50 motion and hereby **DISMISSES** Plaintiffs' claims with prejudice.

### III. Conclusion

For the aforementioned reasons, the Court hereby **STRIKES** the expert witness testimony and reports of both Dr. John F. Wiechel and Dr. Carlos Reoyo. As Plaintiffs have failed to provide substantial evidence to support their claims, the Court hereby **DISMISSES** their claims against Defendant Bridgestone–Firestone, Inc., **WITH PREJUDICE.**

**IT IS SO ORDERED.**