Daniel DONATELLI, Plaintiff,

v.

UNUMPROVIDENT CORPORATION, Defendant.

No. CIV. 04–1–PS.

United States District Court, D. Maine.

Dec. 22, 2004.

---

Sumner H. Lipman, Tracie L. Adamson, Lipman, Katz & McKee, Augusta, ME, for Daniel Donatelli, Plaintiff.

Margaret C. Lepage, Joanne H. Pearson, Pierce, Atwood LLP, Portland, ME, for Unumprovident Corporation, Defendant.

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY

KRAVCHUK, United States Magistrate Judge.

UnumProvident has moved to exclude from trial the testimony of Daniel Donatelli's expert witness, Mary H. Fox, Ph.D. (Docket No. 71.) Donatelli has designated Dr. Fox as an expert from whom he will elicit testimony concerning lost earnings.[1] Dr. Fox is not an expert in accounting or economics. Instead, Dr. Fox has a doctorate in the field of applied adult development-assessment and has worked in the field of industrial psychology for approximately 25 years. In addition to her Ph. D., Dr. Fox has a baccalaureate degree in psychology and a master's degree in applied psychology. In addition to her work in her field, Dr. Fox regularly teaches at

---

1. Donatelli also designated Dr. Fox to offer an opinion that he was wrongfully terminated by UnumProvident. According to UnumProvident, the parties have stipulated that Dr. Fox will not offer an opinion on liability at trial. (Docket No. 71 at 2 n. 2.) Donatelli does not contest this assertion in his opposition memorandum.

various academic institutions. Her coursework primarily involves organizational psychology with a focus on personnel and human resource management. (Aff. of Mary Fox, Ph.D., Docket No. 93, Elec. Attach. 1, ¶¶ 2–3.) However, one graduate level course that she teaches is "testing and assessment," which she maintains is "principally based on mathematical statistics." (*Id.,* ¶ 3.) Dr. Fox avers that her coursework relies on mathematics and statistics and that she has "used basic statistical and mathematical formulas within the field of testing and assessment, as well in expert witness consulting and in vocational rehabilitation." (*Id.,* ¶ 4.) If allowed to testify, Dr. Fox would opine that Donatelli is likely to suffer significant lost earning potential over the course of his career because the opportunity for promotion and the compensation he received at UnumProvident were better than what is generally available in the Portland-area employment market and because the skills Donatelli developed at UnumProvident are specific to UnumProvident's "niche" industry such that Donatelli will not be able "to completely regain economic ground," because he would first have to go through a period of on-the-job retraining with any new employer.[2] (*Id.* ¶¶ 5, 7, 9.) In addition, Dr. Fox would opine that Donatelli "would be nearly prohibited from moving back into the insurance industry" because he would need to use UnumProvident as a reference and would be constrained to tell prospective employers exactly why he left UnumProvident. (*Id.,* ¶ 5.) I conclude that while Dr. Fox's testimony is admissible in large measure, I will **GRANT** UnumProvident's motion to exclude as to her damages computation.

## Discussion

■ Pursuant to Rule 702 of the Federal Rules of Evidence:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

UnumProvident argues that Dr. Fox should not be permitted to testify because she is not qualified to offer an opinion on damages, because she has failed to produce the data on which she bases her opinion concerning potential alternative employment and compensation, because she based her opinion concerning potential alternative employment on unsubstantiated assumptions, because her methodology cannot be empirically verified and deviates from generally accepted methods for calculating front pay awards, and because her testimony would not assist the trier of fact. (Docket No. 71 at 2.) UnumProvident's memorandum raises some legitimate concerns and it is Donatelli's burden to prove that Dr. Fox's proposed testimony will be in keeping with the standards set by Rule 702. Thus, Donatelli must demonstrate that Dr. Fox's opinions have been arrived at "in a scientifically sound and methodologically reliable fashion." *Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co.,* 161 F.3d 77, 85 (1st Cir.1998).

### 1. Dr. Fox is qualified to testify as an expert.

■ Based on her academic and professional background, I conclude that Dr. Fox

2. In her report, Dr. Fox's characterization is that Donatelli's career suffered "the worst kind of derailing." (Dr. Fox's Report Mem., Docket No. 73, Elec. Attach. 2, at 7.)

is qualified to testify as an expert on the impact of job loss on an employee's long-term economic condition. In addition, I conclude that Dr. Fox is qualified to testify as an expert concerning the availability of alternative employment in a given market, the transferability of a given individual's job skills and qualifications, and how one employer's salary, benefits and system of promotion compare with the employment market generally. As to Dr. Fox's computation of damages, I am not persuaded by UnumProvident's assertion that only an expert in accounting, finance or economics should be permitted to offer such testimony. On this point I agree with Dr. Fox that mathematical formulations designed to estimate the value of future earnings and benefits, insofar as they are based on the effect of annual percentage increases designed to reflect inflation and/or the cost of living adjustment and periodic promotions, are relatively straight-forward and should not be the exclusive domain of accountants and economists. It seems to me reasonable that someone in Dr. Fox's profession would have familiarity with such figures and with how to use them.[3] Thus, rather than restrict Dr. Fox's proposed damages testimony based on her qualifications, I think that it makes more sense to evaluate that testimony based on the evidence pertaining to whether meaningful data was obtained and a reliable methodology was applied with respect to the specific circumstances of this case. When her testimony regarding Donatelli's quantified monetary loss is tested in this fashion, it simply fails to pass muster.

### 2. Dr. Fox's assumptions

■ With respect to Dr. Fox's methodology, UnumProvident complains that it "is flawed because it incorporates assumptions not established by the evidence, lacks a means of verification and contains substantial mathematical errors." (Docket No. 71 at 6.) First, UnumProvident observes that Dr. Fox's estimate of Donatelli's residual earnings (the term Dr. Fox uses to describe the earnings Donatelli is likely to make following his departure from UnumProvident) was based on an assumption that Donatelli would take eight years to finish his academic degree work—and to receive a related promotion in the workplace—because he had lost the benefit of UnumProvident's tuition reimbursement program. (*Id.*, citing Depo. of Dr. Fox, Docket Nos. 72–73, at 120.) In fact, Donatelli finished his degree in business administration with a minor in accounting as of May 2003, roughly nine months before Dr. Fox put her report together and 13 month before her deposition (Donatelli Depo., *under seal*, at 12–13.) As UnumProvident rightly observes, Dr. Fox's analysis of Donatelli's earning potential over the first eight years is flawed in this respect. Next, UnumProvident takes issue with Dr. Fox's testimony that Donatelli will not be able to work in the insurance industry because "he's been blackballed in [the] industry." (Docket No. 71 at 7, citing Dr. Fox Depo. at 106.) Dr. Fox's deposition testimony reveals that she has no factual basis to support this opinion, other than the natural concern that arises for Donatelli over whether he will be able to obtain a positive reference from UnumProvident after three years of employment and how he should respond if asked by a potential employer why he left. (Dr. Fox Depo. at 106–110.) Finally, UnumProvident com-

---

**3.** Although UnumProvident points out mathematical errors in Dr. Fox's report, UnumProvident has not contested Dr. Fox's use of 4 percent as an appropriate figure to compute annual earnings increases. Nor has it object-ed to her use of the 10 percent figure as appropriate to estimate the value of lost benefits. In my view, the computational errors that UnumProvident points out go to weight rather than admissibility.

plains that Dr. Fox's estimate of residual earnings lacks reliability because Dr. Fox assumed that Donatelli's first two years outside of UnumProvident would see depressed earnings based on Donatelli's *theoretical* need to get over the negative experience and reevaluate his career path. Once again, it is curious that Dr. Fox's residual earnings estimate has to be so theoretical. As of her June 15, 2004, deposition, Donatelli had been out of UnumProvident for roughly two years. Dr. Fox testified that she had not spoken with Donatelli about whether he needed such time or how much time he needed, although her primary profession involves assessment and counseling of employees. (Dr. Fox Depo. at 54.) Furthermore, counseling aside, one would tend to think that Dr. Fox would have had some actual earnings data to rely on as of her deposition. I note that there is a continuing obligation to update an expert's designation and report as new data becomes available. Why that has never been done in this case is a mystery. All of the concerns raised in this section concern Dr. Fox's estimate of Donatelli's prospective residual earnings.[4] Although these particular concerns are, perhaps, not so momentous that they could not be best addressed through cross-examination, my impression is that, when combined with the additional concerns addressed below, Dr. Fox's opinion as to Donatelli's likely residual earnings and net earnings and benefits ought to be excluded because there is no way for the court to discern whether it amounts to anything other than an *ipse dixit* based on Dr. Fox's self-professed market "sense."

### 3. The lack of data.

■ UnumProvident objects to Dr. Fox's estimate of Donatelli's future earnings outside of UnumProvident because Dr. Fox did not produce or preserve any data, figures or documentation to support her estimates. (Docket No. 71 at 8.) The point is that the record is devoid of any year-to-year calculation that would disclose the figures Dr. Fox used to produce the future earnings and lost earnings estimates in her report. (Dr. Fox. Depo. at 40.) As for research to support her figures, Dr. Fox testified that she had phone conversations with a human resources person at an area employer (a textile manufacturer/retail clothing store that Dr. Fox was otherwise engaged by), that she reviewed internet job postings for the Portland area posted on "Monster.com" and data made available to the public on the Department of Labor website, and that she reviewed the want ads placed in Portland-area newspapers. As for the data she found while surfing the net, Dr. Fox failed to print or otherwise preserve it for trial. (*Id.* at 44.) As for area newspaper want ads, Dr. Fox could not name a single publication. Nor could she produce any copy of a want ad from her file on this case. (*Id.* at 131–32.) Moreover, as with the information obtained through the human resources person, Dr. Fox's testimony reveals that her "research" was not even conducted with Donatelli specifically in mind. Rather, it was performed in connection with assisting the employees of the textile manufacturer/retailer. (*Id.* at 132–34, discussing matrixes of want ads faxed by the human resources person, which "research" ended once that unrelated project ended.)[5] None of this data or other sup-

---

4. UnumProvident's critique of mathematical errors contained in Dr. Fox's estimate of what Donatelli could have earned had he remained at UnumProvident goes to weight, not admissibility.

5. How a review of want ads clipped by a human resources person for textile/retail workers could constitute research on behalf of Mr. Donatelli is not explained. Moreover, with respect to newspaper want ads, Dr. Fox

portive data [6] has been produced, including in connection with the instant motion. Based on my review, I conclude that there is no principled basis for the court to conclude that Dr. Fox's opinion concerning Donatelli's residual earnings and net lost earnings is based on some concrete underlying data and not merely on Dr. Fox's self-proclaimed market sense or *ipse dixit.* I recognize that an expert need not recite "details about all of the raw data used to produce a conclusion," *Hayes v. Douglas Dynamics,* 8 F.3d 88, 92 (1st Cir.1993), but here there simply is no data or persuasive evidence that Dr. Fox ever really applied herself to the task of performing employment and earnings research specifically tailored to Donatelli.

#### 4. Other concerns

■ UnumProvident's motion raises objections based on the rules applicable to front pay awards. According to Unum-Provident, the court ought to exclude Dr. Fox's damages testimony on the independent ground that she failed to adhere to the discretionary factors governing a front pay award. (Docket No. 71 at 15–16.) Donatelli's whistleblower claim affords him the opportunity to obtain damages for "future pecuniary loss." 5 M.R.S.A. § 4613(2)(B)(8)(e). "The Law Court has not defined what considerations inform a court's decision whether to award front pay under the [Maine Human Rights Act], but has indicated its general willingness to

follow the lead of federal law. Under federal law, since future damages are usually speculative, courts, in exercising their discretion, should consider all of the circumstances of the case." *Currier v. United Techs. Corp.,* 326 F.Supp.2d 145, 158 (D.Me.2004) (citation omitted). In light of my Rule 702 ruling regarding the admissibility of Dr. Fox's estimate of residual earnings and lost earnings and the fact that any front pay award lies within the court's discretion, I am not inclined to think that the discretionary factors which govern such an award ought to be analyzed at this juncture. Since an award of "front pay" as mathematically computed by Dr. Fox using her formula of 4% increase per year, plus 10% for benefits, is necessarily interrelated with her unsupported residual earnings and lost earnings opinions, not to mention her equally unsupported and theoretical speculation that Donatelli would have continued working at UnumProvident for twenty more years, I think this testimony lacks sufficient reliability to be admissible under Rule 702.

### Conclusion

For the reasons stated herein, Unum-Provident's motion to exclude is **GRANTED, IN PART.** Donatelli has failed to meet the burden imposed by Rule 702 with respect to the admissibility of Dr. Fox's opinion that UnumProvident has "blackballed" Donatelli within the insurance in-

---

conceded that she did not perform "an analysis" of the Portland job market for Mr. Donatelli. (Dr. Fox Depo. at 137.)

**6.** In her affidavit submitted in opposition to the instant motion, Dr. Fox asserts that her "market research" is "ongoing," and that it is rare for someone in her field to retain data in relation to expert testimony provided in a specific case. (Dr. Fox Aff., ¶ 7.) But insofar as Dr. Fox maintains that her failure to preserve data is "well within the generally accepted practices," she qualifies her statement

by asserting "within the human resources field [and] that of vocational rehabilitation." I grant that it would make little sense to print voluminous data on broad employment markets with respect to Dr. Fox's broader calling in human resources and vocational rehabilitation consulting, but as an expert witness on damages in a suit pertaining to a singular individual pursuing a narrow range of jobs in a singular market, I am not persuaded that general market awareness is enough.

dustry, her estimate of Donatelli's residual earnings capacity in the Portland market and, by extension, her bottom line estimate of "net loss of future earnings due to termination," reflected on page 8 of her report. Dr. Fox's opinion regarding Donatelli's likely earnings had he remained at UnumProvident, which is based on a reliable formula and, importantly, some real data (the mathematical errors raised by UnumProvident go to weight), is likewise excluded, not because of lack of data, but because once the "residual earnings" figure has been excluded, the mathematical total, correctly computed, of what Donatelli would have made had he remained at UnumProvident for twenty years becomes a speculative and meaningless number unrelated to any actual damages and therefore of no assistance to the trier of fact.

This exclusionary ruling does not extend to Dr. Fox's knowledge about how future earnings should be estimated, or Dr. Fox's opinion that Donatelli will experience an economic setback as a result of the relative non-transportability of his skills, the apparent loss of a positive reference from UnumProvident, and the difficulty in explaining why he left UnumProvident.

### CERTIFICATE

Any objections to this Memorandum of Decision shall be filed in accordance with Fed.R.Civ.P. 72.

**So Ordered.**